Abraham R. Margulies, J.
This is an application for an ordér pursuant to rule 293 of the Rules of Civil Practice authorizing the withdrawal from Jamaica Savings Bank, formerly the Rock-away Savings Bank, of funds of the infant deposited therein pursuant to section 980-a of the Civil Practice Act to pay the petitioner, Joseph W. Stackpole, the father of the infant Peter Stackpole, out of the moneys on deposit to the credit of said infant, the sum of $350 to he used and expended for the purpose of paying for the first year’s tuition of the said infant for his education in a religious high school, and to pay the sum of $50 to the attorney who prepared the moving papers.
By an order entered on the 23rd day of May, 1955 there was deposited in the Rockaway Savings Bank to the credit of said infant the sum of $845. There is now on deposit in said account the sum of $890.21, which includes interest accrued to date.
The infant, Peter Stackpole, resides with the petitioner together with the other members of petitioner’s family, consisting of his wife, a daughter age 17 years, a daughter age 13 years, and the infant who is 14 years old. The petitioner resides in a four-room apartment for which he is paying a monthly rent of $100, including utilities. Petitioner’s take-home pay is $95.83 per week. His wife is employed as a typist for which she receives $35 per week.
Petitioner states that he is desirous of giving the infant a religious education and suggests that tuition and books be paid for out of the infant’s fund. The petitioner cannot pay because he states that he had to borrow money at some prior time which he is paying off at the rate of $85 per month and on which there is still a balance due of approximately $2,000. There is nothing in the petition to show when and for what the money was borrowed and for what purpose it was used. But he states that he must now meet a payment of the first year’s tuition for the infant Peter Stackpole, which he is financially unable to meet. There is no explanation of why the infant was enrolled without assurance of funds.
The infant Peter Stackpole likewise signed an affidavit that he is desirous of obtaining the education referred to in a religious high school and joins in the request for withdrawal of his funds for that purpose, and in addition to pay counsel.
The purpose for which the request is being"made is an excellent one. The court commends a parent who desires that his youngster obtain a religious education. There is more to human life than eating and drinking, getting clothes to wear, having a *924 place to live where the elements can not come in. The life of the human spirit is ever so much more. Young people of all religions should learn about the history of the holy days, the meaning behind the prayers and ceremonies, and to develop a close understanding of their faith.
However, in determining the merits of this application to withdraw the infant’s funds the court must find whether or not the same is permissive. Rule 293 of the Buies of Civil Practice permits the application of infant’s property, or any portion thereof, to the infant’s support, maintenance or education which has been deposited pursuant to section 980-a of the Civil Practice Act.
This is one of the. many applications to withdraw infant’s funds for reasons not permitted. They are so frequent as to require comment from this court especially in light of a recent opinion from a learned Judge serving in another court. Also because of some common defects found in the moving papers, the form of the petition will be discussed.
The cases cited below will show both what is necessary on applications to withdraw infant’s funds and the instances where such withdrawals are permitted. (De Marco v. Seaman, 157 Misc. 390; Matter of Groom, 203 Misc. 574; Gaffney v. Constantine, 87 N. Y. S. 2d 131.)
The citations above briefly point out :
“ 1. The court will not allow withdrawals from the fund for necessaries during the minority, for the reasons that it is the obligation of the parent or relief authorities to provide them. Funds for food and clothing come within the scope of this prohibition.
“ 2. ‘ Upon clear proof ’ that the parent has not the means, the court will allow withdrawals from the fund under the following circumstances:
“ (a) Where the withdrawals will serve to place the crippled infant on a footing more clearly equal with those of sound bodies. A college education may be allowed for hereunder.
“ (b) Where the withdrawals Avould prevent further handicap to the infant. Unusual surgical or medical care, eye and dental treatment may be allowed for hereunder.
“ (e) Where the withdrawals will serve to enable the infant to obtain treatment demanded by the child’s condition, resulting directly from the accident. Camp and country sojourns may, in extreme cases, be allowed for hereunder.”

*925
The petition should contain the following:

(1) Full explanation of the reason for the withdrawal.
(2) Several sworn statements by qualified persons of the estimated costs of the proposed expenditures in dollars and cents and not in round figures, such as sworn statements of the doctor or dentist and the fact that in the opinion of the party making the affidavit, that the work to be done is necessary. The check or checks for money to be withdrawn or expended should be made payable to the dentist or the doctor, or other person, as allowed by the court order and not to the father or guardian.
(3) Infant’s age.
(4) Date when and amounts recovered, respectively, by the infant and parent.
(5) Amount on hand and earned income.
(6) Recital of previous withdrawals and reasons.
(7) Financial circumstances of infant’s family.
(8) Statement that expenditure cannot be afforded by the family. Must be upon clear proof.
(9) Nature of the infant’s injury and present state of health.
(10) Any other facts material to the application.
The damages granted to the infant in this case were to compensate him for the pain suffered and injuries received and is for the infant’s special benefit. They were required by law to be deposited in the bank subject to the order of the court until delivery to him on the attainment of his majority. It is the duty of the court to protect these funds. It should be scrupulously discharged. •
It is the parents’ obligation to support this infant and his other children and money should not be withdrawn from the fund even for the infant’s necessaries. The only purpose for which this money may be used is that it may not do violence to the reason for which the fund was created. We must ever remind ourselves that the money on deposit is the infant’s property and the court has full control of the money allotted to the infant which is held subject to the order of the court until the infant attains his majority when it should be delivered to him. The guardian of the infant in this case is the Municipal Court of the City of Nbav York and as such guardian the money must he kept intact unless some portion has been withdrawn by court-order for any legal purpose for Avhich such money may be used. In this instance it appears that the fund would be exhausted in less than three years. All that is known is that the petition states that the petitioner expects to expend approximately $350 for the benefit of the infant by sending him to a religious high *926 school. The law places the obligation of supporting the infant during his minority upon his father, the petitioner herein. The infant is not called upon to support himself. The court has no right as the protector of the infant to permit any funds to be diverted or dissipated.
In spite of the cases cited, judges have granted applications to withdraw infant’s funds with the results that parents as well as attorneys can cite instances where favorable consideration has been given.
The usual reason given for withdrawing infant’s funds awarded to the infant is the lack of income in the family of the infant. It may seem logical for a father to use the fund. He knows the money is there and the cause seems proper. It is a mistaken kindness to the infant to hand over these funds to the parents and upon majority to hand over to the infant merely a bunch of receipts for the dissipated fortune. In any event the money should not be delivered to the petitioner, and any check drawn should be to the order of the person or persons so designated to receive same by the court order.
The solicitude of the court for the infant has been ably expressed by Cuff, J. in Gaffney v. Constantine (supra, p. 132) as follows: “ This court is the guardian of that child’s funds, and when the child reaches twenty-one he has a right to expect to receive the money awarded to him for his injury with interest and not a bundle of court orders showing that his funds were spent for ordinary necessities of life which others were obligated to furnish to him.”
It is laudable and commendable on the part of a parent to try and provide a religious education for a child.
In a study of religion there is to be found familiar concepts. These are the concepts of liberty, forgiveness, of thanksgiving and of justice, ideas that belong not only to one particular religion, but to a whole free world.
In days such as these, when we are beset with so many world problems, we need more of the teaching of religion. Not only world problems but also personal problems with which we are found daily can be surmounted when our faith is stronger and our religious information is broader. Religious teaching and religious inspiration help us in every stage of our lives to live more fully and therefore more happily. In youth, with all of its strength and enthusiasm, there is also a sense of rebelliousness. It is religion which seeks to temper that negative spirit and give a youngster the wisdom and inspiration that would steady him and give him a sense of idealism and striving.
*927 If this court believed that the infant Peter Stackpole would be deprived of a religious training or education, it would be the first to make the requested allowance, but there is adequate provision for religious training of a child provided by the Protestant, Roman Catholic and Jewish religions. But money of the infant may not be spent for such a purpose. The churches, synagogues and affiliated religious organizations provide for religious training. Today large sums of money are contributed to be used for that specific purpose. This court is the titular head of a religious organization. Religious training is offered to all youngsters regardless of ability to pay.
Recently a learned member of the Bench wrote an opinion in which he stated in substance that withdrawal of infants’ fund is permitted for religious training where the parents lack the means to pay for it since the infant will benefit more from religious training than money. This court most respectfully disagrees. The infant may obtain all the necessary religious training in his church or synagogue and still retain the money which is rightfully his.
For the reasons stated the application is in all respects denied.