Isadore Bookstein, J.
Petitioner instituted this proceeding to review a determination of the Albany County Welfare Commissioner denying payment of two hospital bills for one Pearl Schoonmaker, an alleged medically indigent person and to compel payment thereof.
Respondent served no answer to the petition. Instead, he served an affidavit. In this posture, Special Term dismissed the petition. (27 Misc 2d 126.)
An appeal was taken from the Special Term order of dismissal to the Appellate Division which reversed the Special Term order on procedural grounds, since no answer was served and gave leave to respondent to serve an answer, which was subsequently done. (14 A D 2d 380.)
In its opinion for reversal, the Appellate Division said (p. 382): “If, however, we were to consider the merits, the order would likewise have to be reversed. ’ ’
After the answer was served, petitioner made a motion for summary judgment. Special Term denied that motion on the ground that there remained a triable issue of fact as to whether or not Pearl Schoonmaker, hereinafter referred to as “ Pearl ”, was a “ medically indigent ” person and made an order for that single issue to be tried at Trial Term and that issue has now been tried.
It is clear that there is no factual dispute, except as to the sole issue thus tried.
“Pearl” was admitted to the hospital of petitioner as an emergency patient on two occasions, viz., on June 25, 1960 and on July 23, 1960. Because of the emergencies, there was no prior authorization for her admission by respondent on either occasion. The charge for the first admission was $393 and for the second admission, $675.36, or a total of $1,068.36, for which amount petitioner seeks payment from respondent.
In compliance with section 187 (subd. 2, par. [c]) of the Social Welfare Law, petitioner gave due and timely notice of the emergency admissions of “ Pearl” as a medically indigent person, and that it looked to respondent for payment.
Precisely when does not appear, but “ Pearl ” or her husband, Frank Schoonmaker, hereinafter referred to as “Frank” *688 applied to respondent for relief provided for by section 131 of the Social Welfare Law.
Pursuant to section 132 of the Social Welfare Law, respondent made an investigation as required thereby. The same investigation served as the investigation of “ Pearl ” as a medically indigent person as required by section 187 (subd. 2, par. [c]) of the Social Welfare Law.
On the basis of such investigation, respondent denied the relief sought under section 131 and also refused payment of petitioner’s bills on the ground that “ Pearl ” was not medically indigent, for the reason that her husband, who was legally responsible for her hospital bills, was financially able to pay same.
The report of the investigator for respondent reveals the following situation with reference to the financial status of “ Pearl’s ” husband, “ Frank ”:

Debts

Albany Hospital............... $259.00
Dr. Graves.................... 69.00
Dr. Rockmare ................. 90.00
Dr. Leibin..................... 40.00
Dr. Smith..................... 20.00
Conklin Food Store............. 70.00
Car Insurance................. 100.00
Col. Finance Co................. 200.00
Total ......................... $848.00
Properly employing a budgetary formula issued by the New York State Department of Social Welfare, respondent fixed the budgetary needs of the Schoonmaker family, as follows:
Pre-added..................... $167.90
Heat.......................... 27.29
Transportation ................ 8.67
Needs......................... $203.86
That report also computed “ Frank’s ” earnings at $246.10 per month, based on take-home pay of $57 per week. Deducting the budgetary needs as computed by the respondent’s investigator, to wit, $203.86 as enumerated above, from “ Frank’s ” income of $246.10, left a theoretical surplus of $42.24 per month.
With reference to the above schedule of debts, the investigator’s report states that such debts are not included in the budget as it is felt that they are taken care of by aid in the food budget and the payment of no rent.
*689 The aid thus referred to is the fact that “ Pearl ”, her husband and their three children, ranging in age from about 14 to about 17 years of age, live in her father-in-law’s residence, without paying rent and that the father-in-law makes some contribution to the cost of food.
The report further shows that “ Frank ” owns a 1957 automobile, financed by Gr. M. A. 0., on which he is required to pay $47 monthly. Hence, the conclusion was reached by such investigator that the application for relief under section 131 of the Social Welfare Law should be denied, because of the statistical budgetary surplus of $42.24 per month; the ability of “ Frank ” to pay $47 per month for the automobile; and his father’s contribution to the food budget and his permitting the family to live in his residence rent free, together with the investigator’s opinion that 11 Frank ’ ’ is able to pick up some extra money in the community as he is an excellent mechanic on farm equipment and machinery.
So far as the automobile is concerned, “ Frank ” needed it for transportation to and from his residence and place of employment, which is a considerable distance from the place of residence.
On the trial, it developed that the automobile has been repossessed because of the failure to pay the required monthly installments. How he now gets from his place of residence to his place of employment does not appear, but the budget allows $8.67 per month for transportation.
We have then the situation that, with the imaginary surplus of $42.24 per month, “Frank” is able to pay $47 per month on his automobile and also to make payments on the debts heretofore listed.
While this showing may justify the denial of an application for relief under section 131 of the Social Welfare Law, it certainly fails to demonstrate that ‘1 Frank ’ ’ is financially able to pay the hospital bills due to petitioner.
The correctness of the denial of relief under section 131 of the Social Welfare Law is not before me for review.
However, it is on the same basis that respondent has refused payment of petitioner’s bills, presumably on the ground that ‘ ‘ Pearl ’ ’ is not medically indigent and that her husband, “Frank”, is financially able to pay the bills rendered by petitioner.
The reason assigned for the denial is as follows: “ W shows budget surplus sufficient to make small monthly payments direct to the Hospital Business Office.” (The W above stands for Woman — “ Pearl ”.)
*690 The two conclusions, viz., that “Pearl” is not medically indigent and that “Frank” is financially able to pay the hospital bills, are unrealistic and unreasonable.
That the patient, “Pearl”, is medically indigent is established beyond peradventure. Indeed, she is penniless and absolutely indigent.
On this record, a conclusion that her husband, ‘ ‘ Frank ’ ’, is financially able to pay petitioner’s bills is equally unrealistic and unreasonable.
Compare St. Joseph’s Hosp. v. Woloson (7 A D 2d 696), where on a showing that the father who, by section 101, was responsible for the hospital bills of his daughter, was earning $75 per week, it was held that a prima facie case of medical indigence was made out.
For “ Frank ” to be financially able to pay the bills means that he is able to pay them in full presently, or, as in any customary business transaction in 30 days. Obviously, no such situation exists.
If respondent is correct, then the best that petitioner can do is bring suit against “ Frank ”, recover a judgment and file a garnishee execution with his employer. Interest would accumulate, and Sheriff’s fees would be added, thus increasing the debt and petitioner would receive about $6 per week. In that situation, it would be years before petitioner would be paid and then there would also be deductions for attorney’s fees. There would be nothing to prevent “ Frank”, in desperation, from filing a petition in bankruptcy and obtaining a discharge from the debt due to petitioner and from his other debts.
Section 187 of the Social Welfare Law envisions no such result, so far as petitioner is concerned.
Under that section, so long as petitioner has complied with its provisions, as to which there is no issue, if the patient is medically indigent, the respondent must pay the hospital charges, regardless of whether or not there is some person, under the law, who is financially able to pay the bills at the time when they were incurred.
Subdivision 1 of section 101 of the Social Welfare Law designates certain persons who shall be responsible for the support of a recipient of public assistance, if financially able. Under that section, the only person in the category of those made responsible is the husband, “ Frank ”.
Under subdivision 3 of that section, the liability imposed thereby is for the benefit of the public welfare district or any legally incorporated nonprofit institution which receives pay *691 ment for the care of medically indigent persons, and the same proceedings to compel snch payment may be brought by the institution in any court wherein a proceeding could be brought by a public welfare official to compel support.
Apparently, respondent would relegate petitioner to such a course of action.
There are several reasons why this petitioner cannot be compelled to take such a course.
In the first place, so far as responsibility of the husband, “ Frank ”, is concerned, section 101 did not create a new liability, since the husband was liable at common law for the hospital care of his wife. The only thing that said section did with respect to a husband was to make it permissive for a hospital to proceed against him in the same court wherein the public welfare officer might proceed against him in appropriate legal proceedings. Such power, thus conferred, is permissive and not mandatory.
In the second place, and in any event, the husband in this case was not, at the time that the hospitalizations occurred, and is not now, financially able to pay the charges of petitioner.
In the third place, it is my opinion that respondent is required to pay the petitioner its charges, where the person who incurred them was medically indigent and 6 £ Pearl ’ ’ was, and is, medically indigent; and that under section 187 of the Social Welfare Law, petitioner is entitled to be paid by respondent, regardless of whether or not her husband is financially able to pay the bills and regardless of his statutory or common-law liability and regardless of whether or not there is some other person who is liable under the statute and who is financially able to pay the bills, which, in any event, is not the situation in this case.
The fact that either the petitioner or the respondent, map proceed against a person legally liable and financially able, does not preclude petitioner from the protection to it afforded by section 187 of the Social Welfare Law. It is true that some of the decisions at least intimate that, if the person who is responsible for the hospital bills of the medically indigent person, is financially able to pay, then the Welfare Commissioner is not required to pay the hospital, under section 187 of the Social Welfare Law.
Be that as it may, in this ease ££ Pearl ” is medically indigent and ££ Frank ” was and is not financially able to pay the bills in question.
As to a person liable at common law, such as the husband, for necessities for his wife, or vice versa, the welfare official can *692 always proceed against such person, even where the financial ability of such person became such after the obligation was incurred. (Hodson v. Stapleton, 248 App. Div. 524.)
However, as to others upon whom section 101 of the Social Welfare Law imposes liability, the financial ability to pay had to exist at the time the obligation was incurred. (Matter of Aspenleiter, 203 Misc. 109; Fuller v. Galeota, 271 App. Div. 155; Matter of Moore, 2177 App. Div. 471.)
The possibility of future financial ability of the medically indigent person or of her husband to pay hospital charges is no basis for refusing to pay the hospital bill of such presently medically indigent person, when her husband is not presently financially able to pay same. (Matter of Oswego Hosp. v. Kessler, 204 Misc. 596.)
The fact that the taxpayers of the social welfare district should be protected from paying the bills of one legally liable therefor and financially able to pay the same is no reason for requiring petitioner to do more than to comply with section 187 of the Social Welfare Law. Respondent can take appropriate proceedings against a person legally liable and financially able in order to reimburse the public treasury for the payments to the hospital. ’
It should be borne in mind that petitioner, as a practical matter, is bound to take in an emergency patient and section 187 is designed to assure it of prompt payment by the social welfare district, if the emergency patient is medically indigent.
However commendable may be the desire of respondent to prevent unnecessary invasion of the public treasury, such motive cannot permit respondent to fail to perform a duty ‘ ‘ specifically enjoined ” upon him by law, to wit, the making of the order for payment to petitioner of its bills, once medical indigence is established. If perchance, in addition to medical indigence of the patient, there must also exist a lack of financial ability on the part of the husband to pay the bills, before respondent is required to make the order for payment, as provided for in section 187 of the Social Welfare Law, both propositions here exist, i.e., medical indigence of “ Pearl ” and financial inability of ‘ ‘ Frank ’ ’.
In the situation presented in this case, the determination of respondent to the contrary was unreasonable and unrealistic, and hence, in a legal sense was arbitrary and capricious.
Accordingly, the determination of respondent is annulled and he is directed to pay to petitioner the amount of its charges, to wit, $1,068.36.