William J. Began, S.
This is a proceeding commenced by an order directing the Brie County Commissioner of Social Serv *430 ices to show cause why funds of the petitioner paid over to the Department of Social Services by an order of former Surrogate Charles T. Yeager in 1957 should not be repaid to her.
The petitioner, Joan M. Harmon, nee Gospodarski and also known as Diane Gospodarski, was born on February 15, 1947. From the time of her birth she was a public charge and maintained by the Erie County Welfare Department in infants’ homes and foster homes until September, 1964. She was married to Charles Harmon in 1965 and was removed from the welfare rolls at about that time.
In 1955 the petitioner was involved in an automobile accident. By the order of the Supreme Court of Erie County dated August 23, 1956 the infant’s settlement was allowed, bills were ordered paid, the sum of $1,005.45 was ordered paid to the Erie County Welfare Department as reimbursement as a 50% compromise for sums paid by said department to Our Lady of Victory Hospital and the balance of $3,985.55 was ordered paid over to the Commissioner of Social Welfare as general guardian of the infant, jointly with the Guardianship Department of the Surrogate’s Court. The Welfare Department’s allegation that the total sum of $14,674.11 was expended on behalf of petitioner from the date of her birth to shortly before her marriage appears to be unchallenged. By an order of Judge Charles T. Yeager dated November 13, 1957 the sum of $4,012.95 then in the infant’s guardianship account was ordered to be paid to the Commissioner of Social Welfare as part reimbursement “for the support, care and maintenance furnished by the Erie County Department of Social Welfare ”. The pending proceeding is for an order setting aside the aforesaid order of the Surrogate’s Court and directing an accounting by the Commissioner of Social Services and payment of the funds to petitioner.
There appears to be no question but that the sums of money involved were in the guardianship account as a result of the infant’s settlement for personal injuries. Petitioner’s theory herein is that funds of an infant from a personal injury settlement may not be applied for care and maintenance. Many cases in this State promulgate this theory. Matter of Woods (32 Misc 2d 745, 747) states: “ The writer is in full accord with the reasoning, sentiment and decision of Mr. Justice Chef in De Marco v. Seaman (157 Misc. 390, 391). On page 395, the' opinion reads: ‘ The infant’s money was awarded to compensate him for his pain, his suffering and his incapacity occasioned by the accident — not to purchase necessaries for him during his minority. The law obligates the father to provide those *431 necessaries. If he fails in this duty, those agencies should act that provide necessaries for infants without such funds [emphasis supplied]. I am not dealing with infants who possess inheritances but with crippled children each of whom happens to have a small sum of money in place of a normal body ’ ” and at page 396: “ 1 When that money is withdrawn to purchase necessities, it is being misapplied. ’
“The DeMarco decision has been cited in Gaffney v. Constantine (87 N. Y. S. 2d 131); Matter of Groom (203 Misc. 574); Leon v. Walker (1 Misc 2d 219); Gans v. Epstein (149 N. Y. S. 2d 80); Zambrana v. Railway Express (11 Misc 2d 553); Hyter v. Children’s Village (7 Misc 2d 1032); Matter of Stackpole v. Scott (9 Misc 2d 922) and Conigliaro v. Rosa (24 Misc 2d 15).”
Hyter v. Children’s Vil. (7 Misc 2d 1032, 1033) states: “It is thus clear that no withdrawal is justifiable unless it be for an urgent purpose over and above the ordinary necessities of life, helpful to a reduction of the consequences of the injury.”
This court is in hearty accord with the above discussed theory. However, we do not believe in blind application thereof. Personal injury recoveries are not, in this court’s opinion, to be treated as sacred funds untouchable under all circumstances.
In the Woods case (supra) affidavit was furnished by the infant’s mother to the effect that the infant still suffered epileptic seizures as a result of the injuries she suffered from the accident.
In the De Marco case (supra, p. 395) the court indicated it was dealing with 1 ‘ crippled children each of whom happens to have a small sum of money in place of a normal body.” The Hyter case (supra, p. 1033) indicates that the use of infant’s moneys would be justifiable if it were ‘ ‘ helpful to a reduction of the consequences of the injury.”
Nowhere does it appear in the petition, affidavits or memoranda of counsel in the present matter what injuries were sustained by petitioner; whether there was permanency or not; or the likelihood of the necessity of further medical treatment; whether moneys expended by the Welfare Department covered any medical bills arising from injuries due to the accident.
We feel that the purpose of public assistance is for the protection of the public purse and not merely rendered gratuitously. We concur also with those statutes which were designed to relieve the public of part of its burden of supporting the indigent and the obvious purpose of the legislation is to permit recovery from persons responsible for such public relief as has been given.
*432 Consequently, we shall adjourn this proceeding until a calendar call of this court on November 5, 1970 at 10:15 a.m. to arrange for any further necessary testimony or proof to be furnished by either or other parties.