There is no denial that the services were rendered. Defendants resist this claim however on the ground that plaintiff was informed at the time of admission that the infant was covered by Medicaid, that the defendants had no funds with which to pay *279 for the services, and that, if they were informed that the hospital would look to them for payment, they would not have admitted the boy since the required treatment was not of an emergency nature.
After the treatment the hospital sent its bill to the Department of Social Services but it was returned marked 16 Disapproved Insurance ”. No one has explained the meaning of this language since there appears to have been in existence a certificate of eligibility for Medicaid for the defendants and their children, issued by the Department of Social Services for the period which included the dates of the hospitalization.
Plaintiff claims that defendants ’ liability is based on the usual liability of parents for necessaries furnished to their infant child and now moves for summary judgment.
I do not agree. If this were so, then the plaintiff before it could hold the parents liable on their implied promise to pay would be required to show that there was “ an absolute necessity for the immediate rendition of the services ”. (Neilson v. Ray, 17 N. Y. S. 500.) That it has failed to do. On the contrary the evidence discloses that the infant’s admission to the hospital was not of an emergency nature. There was thus no immediate necessity.
But these truisms of the past are no longer valid. There is now a clear-cut substitute for these outdated assumptions.
In 1966 the State Legislature enacted a law for “Medical Assistance For Needy Persons ” (L. 1966, ch. 256, eff. April 30, 1966). Section 363 of the Social Welfare Law (now known as the Social Services Law) declared the objects of this new enactment to be as follows: ‘ ‘ Medical assistance for needy persons is hereby declared to be a matter of public concern and necessity in promoting the public health and welfare and for promoting the state’s goal of making available to everyone, regardless of * * * economic standing, uniform, high-quality medical care.”
Section 365 provides in part: “ (a) each public welfare district shall furnish medical assistance to the persons eligible therefor ”.
Section 367 provides in part: ‘1 The cost of care of an eligible patient shall be a charge against a social services district only when authorized by the commissioner of social services of such district, which authorization shall not be withheld from any patient eligible for such care pursuant to this title and the rules of the board and the regulations of the department.”
*280 Here there was in effect a certificate of eligibility for medical assistance issued for the defendants and their three children at the time of the infant’s admission. Examination discloses that the children were “ eligible for all care and services provided under the Medicaid program. ’ ’ When the child was admitted to the hospital, he was admitted, not on the credit of the parents — they were indigent — but indeed on the credit and responsibility of the Commissioner of Social Services. The conclusion is irresistible that the charge for the hospital services was a proper primary charge against the Commissioner. He became the primary obligor. The plaintiff’s lawsuit is misdirected. It should have proceeded against the Commissioner "when he refused to make payment.
“ It is generally held that where two parties enter into an agreement whereby one promises to pay the other’s debt to a third person, the latter can recover against the promisor. As between the promisor and the promisee, the former becomes primarily liable for the debt. ” (10 K Y. Jur., Contracts, § 244.)
In Matter of St. Clare’s Hosp. v. Breslin (37 Misc 2d 686) the court stated: “ Hnder that section [referring to section 187 of the Social Welfare Law], so long as petitioner has complied with its provisions, as to which there is no issue, if the patient is medically indigent, the respondent [Commissioner] must pay the hospital charges ”.
In affirming this decision the Appellate Division went even further (19 A D 2d 922): “ Thus the legislative purport in section 187, it would seem, is both to insure treatment for those who cannot provide such treatment for themselves and, at the same time, assure payment to the hospital of its bill by the welfare district if the patient is indigent. ”
Section 187 was repealed (L. 1966, ch. 256, eff. April 30, 1966) but the subject matter was covered by sections 365-a and 367. Section 367 was further amended in 1968 (L. 1968, ch. 979, eff. June 22,1968). The amended section 367 seems to be even more liberal than the former one.
Furthermore, examination of this new statute would seem to indicate that only the Commissioner — and then only after he has paid the charges for the eligible recipient — may bring an action for the recovery of the sums so paid. (See Social Services Law, art. 3, tit. 6.)
Moreover, section 366 (subd. 2, par. [a]) provides in part as follows: ‘1 The following income and resources shall be exempt and shall neither be taken into consideration nor required to be applied toward the payment or part payment of the cost of medical care and services available under this title ’ \
*281 The exemptions of income and resources enumerated thereafter are greater than the exemptions allowed in the CPLR 5205 for the collection of judgments. Clearly its purpose was to give the indigent person receiving such care sufficient latitude to gain for himself a self-sustaining position in our economy and in our society.
To permit a judgment, therefore, against these defendants is to allow a subversion of the legislative pattern.
The commencement of the lawsuit itself against these defendants is improper since it requires an indigent, unable to pay for his medical care and assistance, to defend himself in a lawsuit brought to recover the charges for the very thing he is too indigent to pay. He must obtain the services of an attorney which he can ill afford, and he may be called upon to pay interest and costs on a judgment — all at a time when he cannot afford to pay for the very services which became the subject of the suit.
As the court so aptly pointed out in Matter of St. Clare’s Hosp. v. Breslin (37 Misc 2d 686, 690, supra): “ If respondent is correct then the best that petitioner can do is bring suit against ‘ ‘ Frank, ’ ’ recover a judgment and file a garnishee execution with his employer. Interest would accumulate, and Sheriff’s fees would be added, thus increasing the debt and petitioner would receive about $6 per week. In that situation it would be years before petitioner would be paid and then there would be deductions for attorney’s fees. * * * Section 187 of the Social Welfare Law [now sections 365-a and 367 of the Social Services Law] envisions no such result ’ ’.
I have found no case in which it was held that the Commissioner of Social Services is the primary obligor in a case of this type nor has any such case been called to my attention. But the obligation to pay is enjoined upon the Commissioner by law and the legislative pattern is so clear that no other conclusion seems possible.
Perhaps this determination places a hardship on plaintiff, since the time in which to bring suit against the Commissioner may have expired. However, in its declaration of objects (§ 363) the Legislature stated: “ In carrying out this program every effort shall be made to promote maximum public awareness of the availability of * * * such medical assistance.” Who then was more aware of this program than the plaintiff hospital? Besides to hold otherwise would place too great burden on the indigent recipient not contemplated by the statute.
Motion denied.