Fuchsberg, J. (concurring).
These three cases all involve attempts by local Departments of Social Services to assert medical assistance liens pursuant to section 104-b of the Social Services Law against personal injury recoveries by infants. In each case, the fund recovered was inadequate to cover all of the claims asserted. In two of the cases, this inadequacy was so severe that, were all liens honored, the plaintiffs would be left with little or nothing in the way of recovery for their injuries. In the third case, while the settlement is more substantial, so also is the extent of the injury, which is permanent in nature and would almost indisputably have produced a much larger jury verdict had there been no limitations on the defendant’s financial responsibility.
Our task is, of course, to interpret the statutes under which recoupment of public assistance is authorized so as to effectuate their purposes and intent. That intent, I believe, was to permit the courts below to determine, within the limits here *408 inafter discussed, how the rights of the public lienor are to be balanced against the overall identifiable needs of the injured infants. The judicial power to do so appears from a broad examination of the relevant statutes themselves. That examination must include the provisions relating to recoupment of Aid to Families with Dependent Children (AFDC), since the statutory design for recoupment of medical assistance payments was developed primarily in connection with the principles governing AFDC (see Matter of Colon, 83 Misc 2d 344 [Sobel, S.]). Further, important distinctions between adults and infants cannot otherwise be fully clarified.
Title I of article 5 of our Social Services Law sets forth the general principles under which aid is to be given to all persons in need. Subdivision 1 of section 131 states: "It shall be the duty of social services officials, insofar as funds are available for that purpose, to provide adequately for those unable to maintain themselves, in accordance with the requirements of this article and other provisions of this chapter. They shall, whenever possible, administer such care, treatment and service as may restore such persons to a condition of self-support or self-care, and shall further give such service to those liable to become destitute as may prevent the necessity of their becoming public charges. ” (Emphasis added.)
The statute thus places upon welfare officials a duty which gives rise to a corresponding right to receive benefits whenever eligibility requirements are met (Fleming v Nestor, 363 US 603). Additionally, it directs that the aid be given in such a manner as will enable the recipient to become self-sustaining or will prevent his becoming a public charge. In so doing, it states a concept which goes well beyond a mere stop-gap provision for those who have become destitute.
These principles apply to both AFDC and MA programs. It is against that background that it is especially noteworthy that the AFDC provisions, pursuant to which care is provided for infants whose parents are unable to support them, specify:
"Aid to dependent children shall be given to a parent or other relative as herein speciñed for the beneñt of a child under eighteen years of age, or of a child under twenty-one years of age [who is a full-time student] * * * if in the judgment of the administrative agency:
"1. the granting of an allowance will be in the interest of such child, and
*409 "2. the parent or other relative is a fit person to bring up such child so that his physicalmental and moral well-being will be safeguarded, and
"3. disregarding so much of the earned income or other income of the child as may be permitted to be set aside for his future identiñable needs by regulations of the department, aid is necessary to enable such parent or other relative to do so. ” (Social Services Law, § 349, subd A; emphasis added.)
This language of the AFDC sections, so clearly casting the State in loco parentis, presents a striking contrast to the bulk of the provisions contained in the Social Services Law. As a whole, the statute is replete with concern that able-bodied adults not be permitted to cheat the system by receiving benefits when not truly needed. For example, except for certain special categories of adults, such as the aged and disabled, there is little provision for exemption of income against future needs. Thus, for them, eligibility criteria seem directed more at keeping out those who are not destitute than to advancing the "best interests” of such persons, given their "physical, mental and moral well-being”. So the only concerns manifested as to employability are directed to that of the adult parent, not the child. The child’s condition is one of blamelessness.
This dichotomous attitude toward adult and child recipients of public assistance is not new. It descends to us from the old English Poor Laws and is reflected in the welfare statutes of most of the States. (See, generally, Graham, Public Assistance: The Right to Receive; The Obligation to Repay, 43 NYU L Rev 451.) It is characteristic of welfare statutes that, whatever degree of suspicion they direct toward the ne’er-do-well parents, they reflect concern that the children of such persons be brought up with as little stigma as possible and as much encouragement to become self-supporting adults as is possible within the limitations of budget (see Graham, supra, at pp 456-475; Characteristics of State Public Assistance Plans Under the Social Security Act, Public Assistance Report No. 50 [US Dept of Health, Education and Welfare, 1964 ed]).[1] For children at least, the mandate of the statute set forth in section 131 (subd 1), cited above, appears to have meaning.
*410 The general provisions for recoupment of aid from property of welfare recipients demonstrate this same difference in attitude. Section 101 of the Social Services Law defines the category of "responsible relative” (RR) from whom recoupment may be made on the ground of a legal liability to support the recipient of aid. Parents are, of course, responsible for their infant children. Further, subdivision 1 of section 104 authorizes recoupment out of real or personal property which either a recipient or a responsible relative is discovered to have (see Matter of Colon, 83 Misc 2d 344, supra). The extent of such authorized recoupment is quite broad; early judicial attempts to read the provisions of subdivision 1 of section 104 as limited to recoupment from estates where the recipient or relative possessed the ability to provide support at the time the public assistance was given were expressly overruled by the Legislature (see Matter of Moore, 277 App Div 471; § 104, subd 1, par 1, last sentence, added by L 1953, ch 838, § 1).
Subdivision 2 of section 104, however, continues the limitation upon recovery from infants. It states that: "No right of action shall accrue against a person under twenty-one years of age by reason of the assistance or care granted to him unless at the time it was granted the person was possessed of money and property in excess of his reasonable requirements, taking into account his maintenance, education, medical care and any other factors applicable to his condition.” (Emphasis added.)
Thus, the statute differentiates infants from adults not only in its limitation to situations in which the infant possessed funds at the time aid was granted but also, crucial to the cases before us, in its limitation of recoupment to funds in excess of his "reasonable requirements”, a term which it construes rather broadly.
Moreover, while recoupment from adults, under New York’s statute, is explicitly based on a theory of implied contract, no such basis is urged for recoupment from infants.[2] The implied contract theory is not easy to support even in the adult case, *411 since a promise to repay exacted under the duress of pressing basic need has serious legal flaws (see Graham, supra, at p 487; 5 Williston, Contracts [rev ed], § 1608, p 4504, and cases cited therein), but it breaks down entirely in the case of an infant (see Galante v Doe, 68 Misc 2d 295, 298, and cases cited therein). But of course, in the present cases, we need not address the question of whether there is an adequate legal basis for enforcing repayment on the implied contract theory used against adults; it suffices to note that the Legislature has limited recoupment from infants to those situations in which eligibility was misrepresented at the inception (see Social Services Law, § 104, subd 2).
Section 104-b, which creates the Department’s liens here, by its very terms attaches them to causes of action in personal injury suits belonging to "recipients” of aid. That raises the question as to whether section 104-b creates a new and separate right of action or whether it merely facilitates an existing right of recoupment under section 104 itself and is, thus, subject to the limitations on recoupments from infants set forth in subdivision 2 of section 104. From a review of both statutes and the legislative history of section 104-b, the conclusion appears irresistible that the latter section is but facilitative in nature and therefore not free of the substantive restrictions found in subdivision 2 of section 104.
In the first place, statutory liens, absent some clear indication to the contrary, do not create causes of action. Rather, they set priorities and identify specific sources of property against which pre-existing rights may be asserted (see 53 CJS, Liens, § 1, pp 829-830, and cases cited therein).
More important, when the bill which became section 104-b was before the Governor for his approval, the Department itself characterized the enactment as facilitative, stating that: "Experience has shown that persons becoming in need of public assistance because of personal injuries received as a result of the negligence of another have been able to frustrate the attempts of public welfare officials to make a recovery from the proceeds of a suit brought as a consequence of the personal injuries. The failure of attorneys representing recipient to fully cooperate with public welfare officials and the difficulty of learning as soon as possible, of the making of a settlement or of the payment of a judgment, have been the principal reasons for the recipient to obtain a windfall, which has been spent before the public purse could be reimbursed. *412 Both the State and. local treasuries would benefit from the approval of this bill, as a result of the more effective recovery proceedings which could than be pursued by the local public welfare officials.” (Memorandum Accompanying Comments on Bills Before the Governor for Effective Action, New York State Department of Social Welfare, March 31, 1964; italics supplied.)
It was thus the Department’s own perception, at the time the bill was passed, that it already possessed the right to obtain reimbursement from holders of personal injury claims.
This perception is further substantiated by information contained in the memorandum on the bill prepared by the Association of the Bar of the City of New York. That association disapproved of the bill, chiefly on the basis of some semantic confusion which it felt might well be detrimental to the priority of attorneys’ liens, but it added:
"The probable inconsequence of the bill arises from the fact that public welfare officials have been authorized, for many years, by Section 104 of the Social Welfare Law [now Social Services Law] to bring actions against recipients of public welfare assistance who possess real or personal property to the extent of the total cost of such assistance. Despite Section 41 of the Personal Property Law [now section 13-101 of the General Obligations Law], which prohibits the transfer of any claim to recover damages for personal injuries, a few public welfare districts, notably the New York City Department of Welfare, have utilized with great success assignments, not of the claim, hut of the proceeds of such claim. * * * These assignments have been honored, with but few exceptions, with the result that substantial funds have been returned to the public welfare districts. Subdivision 1 of the new Section 104-a [now section 104-b] of this bill would create a lien limited to the amount of such assistance rendered after the accident.
"Since subdivision 10 [now 11] provides that such assignments shall not be adversely affected, the New York City Department of Welfare has advised this Committee that, even if the bill becomes law, it intends to continue the assignment practice to recoup public assistance rendered both before and after the accident. Presumably, most other welfare districts will follow the same course.” (NY Legis Ann, 1964, p 316; emphasis added; see, also, Policies Governing the Administration of Public Assistance, City of New York, Department of Welfare, § 184, extant at the time § 104-b was enacted.)
*413 Furthermore, the Legislature’s express preservation of the assignment procedures in the lien provisions demonstrates its awareness of the limited purpose section 104-b was intended to achieve. Thus, in order to read section 104-b as creating a separate and enlarged cause of action, we would have to assume that the Legislature gratuitously re-enacted such a right. No basis for such an assumption is to be found. To the contrary, since this would be the only "new” right involved, it is reasonable to expect that, had it so intended, the Legislature would have made such a special category of recoupment more explicit than it did. All this militates against the argument that section 104-b creates a new or different right of recoupment against infants.
Any other interpretation would be at odds with the pattern, running through the statute as a whole, of consistent differentiation between the obligations of adults and the conditions under which they may receive aid, on the one hand, and the considerations attached to aid for infants, on the other. For example, under subdivisions 1 and 2 of section 104, distinctions are made between the inheritances of adults and those of infants, distinctions which favor infants in great degree. Therefore, given the utterly gratuituous nature of such bequests when compared to the compensatory and substitutive nature of an award for pain, suffering, and often permanent handicap, it would unnecessarily and impermissibly strain any sense of statutory symmetry to graft on to the facilitative function of section 104-b a substantive purpose to afford infants less protection in their recoveries for bodily injury than in their gifts or bequests.[3]
I turn next to the special requisites of medical assistance recoupment. On constraint of Federal law, no lien against the property of a recipient of medical assistance is permitted. Indeed, reimbursement itself is also severly limited (US Code, tit 42, § 1396a, subd [a], par [18]; Social Security Act, tit XIX, § 1902). Subdivision 1 of section 369 of New York’s Social *414 Services Law was originally adopted in April of 1966 in order to reflect that mandate. It spells out that: "(a) no lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under this title, except pursuant to the judgment of a court on account of benefits incorrectly paid”.
In July of 1966, however, the Legislature appended the proviso that: "Nothing contained in this subdivision shall be construed to alter or affect the right of a public welfare official to recover the cost of medical assistance provided to an injured person in accordance with the provisions of section one hundred four-a of this chapter.” (L 1966, ch 800.)
The apparent conflict between Congress’ seemingly mandated bar to liens and the above proviso can be resolved by reading section 104-b as authroizing recoupment from a defendant rather than from the recipient. So read, the Department may pursue a lien for those of its medical expenditures which are directly connected to the injury in suit, but not for those which are unrelated to the injury. That reading of the statutes appears correct, especially since Federal law requires States to seek recoupment from third parties whose negligence makes them responsible for the costs incurred (US Code, tit 42, § 1296, subd [a], par [25]).
We must thus determine the extent to which the lien provisions of section 104-b, within the confines of subdivision 2 of section 104 may be used to recover medical assistance payments directly connected to the injury itself.
Preliminarily, it should be noted that subdivision 2 of section 104 authorizes recovery only out of funds which the infant possessed at the time aid was granted to him. While this obviously precludes recovery for medical assistance granted prior to the injury, when such assistance is granted between the injury and the eventual settlement, it is reimbursable because a claim in a personal injury suit is "property” within the meaning of the statute (see Matter of Walton, 20 AD2d 386, 389; Mnich v American Radiator Co., 263 App Div 573, affd 289 NY 681; Citron v Mangel Stores Corp., 50 NYS2d 416, affd 268 App Div 905). Consequently, a right of recoupment lies from the time that the infant’s cause of action accrues.
The range of that right to recoupment is not as broad, however, as is, for instance, that which a hospital obtains under section 189 of the Lien Law. Subject only to its ability *415 to demonstrate, on demand, the "reasonableness” of its charges, a hospital may enforce its lien fully (Matter of Meyer v New York Hosp., 7 AD2d 60). In contrast, though it paid a hospital’s bill, the Department is not subrogated in law or in fact to the position of that hospital under section 189.
In its in loco parentis status, the Department instead is the primary obligor against whom the hospital must seek payment before asserting liens on the recovery of the infant (see Social Services Law, § 398, subd 6, par [c]; Mount Sinai Hosp. v Brinn, 73 Misc 2d 1; Knickerbocker Hosp. v Downing, 65 Misc 2d 278). For the Department has the legal duty to provide medical care to the child when its parents cannot do so (Social Services Law, § 398). This statutory duty is unlike that of a neutral third party whose claim for reimbursement in connection with the injury must be honored to the full amount of the infant’s recovery if it cannot be paid out of the parent’s derivative action (see Natoli v Board of Educ. of City of Norwich, 101 NYS2d 128; Matter of Wilson Mem. Hosp. v Puskar, 26 Misc 2d 281).[4] The scope of the Department’s right to recoupment, like its duty to support the child, is to be measured solely by the statutory provisions on which its own powers and duties are grounded.
Premised as it is upon subdivision 2 of section 104, the Department’s right to recoup medical expenses against a negligent defendant is subject to the requirements of that statute. Significantly, the language of subdivision 2 of section *416 104 permits recoupment only when the funds available to the infant are "in excess” of his "reasonable requirements”. Those reasonable requirements do, among other things, include his need for "medical care”.
Thus, the medical care cost expenditures accrued or incurred up to the time of an infant’s full receipt of damages are reimbursable only in fair proportion to the infant’s other "reasonable requirements”. That is not to say that medical assistance liens are rarely expected to be paid in full. Most often, where a settlement or recovery is ample and in proportion to the lien, or where an infant’s injuries are not permanent, or not of such a nature that they will have any significant effect on an infant’s "requirements”, the lien may be expected to be reimbursed. However, in the face of such circumstances as, for example, a substantial reduction in the sum the infant receives occasioned by a desire to compromise disputed liability questions or other elements of uncertainty attendant upon litigation, or where the tort-feasor involved in a particular case is inadequately insured and of insufficient financial responsibility, the Department’s right to recoup may become vulnerable to reduction. Were that not so, the infant rather than the defendant might in fact end up bearing the burden, and this, as noted, is forbidden by Federal law, the recoupment right being based on the theory that the medical expenditures ultimately will come from the tortious defendant.
It therefore becomes necessary for the court in each such case to decide what are the infant’s needs, how much, if any, of the settlement or recovery exceeds those needs and, if there are less than sufficient funds to meet such needs, how much is fairly to be earmarked for medical needs and how much for the other areas of need authorized by the statute. Any excess beyond needs is, of course, available to satisfy the lien. To the extent that it is not, the court does not compromise the Department’s lien; rather it determines how much of the settlement may be defined as funds against which a lien is enforceable under subdivision 2 of section 104. These determinations should not prove burdensome to the courts. Mostly they fall well within the range of the ones which courts are. already required to examine into in any event before approving the settlement of infants’ claims pursuant to CPLR 1208.
Examination of the three cases before us reveals that in *417 none of them were the determinations mandated by subdivision 2 of section 104 made. In Marsh v La Marco and in Griffin v Cox, the medical assistance liens were vacated in their entirety as a matter of law on the mistaken theory that the statute completely barred all such liens. In Baker v Sterling, the Appellate Division, citing Montgomery v Ramos (44 AD2d 811), remanded for a determination of the "reasonableness” of the lien, apparently on a theory that the Department’s rights are analogous to those applicable to hospitals under section 189 of the Lien Law, and for a factual determination as to "whether the settlement of the infant’s cause of action included reimbursement” for the expenditures incurred for medical assistance, rather than for the determination of what part of the settlement should properly be allocated for recoupment by the Department in accordance with the principles which I have articulated here. Accordingly, I believe the orders in Marsh and Griffin should be reversed and the one in Baker modified and each case remitted for further proceedings consistent with the foregoing analysis.
However, as appears from Judge Jones’ dissenting opinion, three of my colleagues read section 104-b as creating a new and substantive right in the Department. On their theory, the lien would be paid in full from infants’ recoveries, irrespective of the latter’s other requirements and, therefore, would be, I respectfully suggest, less protective of infants and more so of the Department than the statute intends.
On the other hand, as appears from Judge Wachtler’s opinion, I am in agreement with my other three colleagues that section 104-b is purely facilitative. But that opinion favors dispositions, which, while not as favorable to the Department or as unfavorable to the infants as is the dissent, are yet at odds with those which, for the reasons I have already outlined, are required by law and practicality. Thus, in limiting the application of the Department’s lien to "that portion of an infant’s award or settlement representing reimbursement for medical expenses”, it ignores the fact that rarely does an infant’s award include medical expenses. Absent a special statute, such expenses are the obligation of the parent charged with providing them and not that of the infant. Save under exceptional circumstances, only the former and not the latter may sue the tort-feasor for their recovery. When the Department, acting in loco parentis, pays them, it may not bring such an action; its sole recourse is under *418 section 104-b and subdivision 2 of section 104; shutting off those paths leaves it with no remedy.
Such limitation would also multiply incentive for the collusive inclusion in an infant’s general settlement of funds which in truth have been paid by a tort-feasor or its insurance carrier on account of medical expenses due a parent, thus putting the funds beyond the practical reach of the Department’s ability to identify and recoup them. These cases are especially vulnerable to such abuse since it is only the rare tort-feasor or his carrier, as the source of the funds, who has any concern with how the total it has agreed to pay is distributed. The limitation may also have the unfortunate effect of impairing the much needed power of the trial courts to prevent arbitrariness or unfairness on the part of intransigent lienors.
Further, Judge Wachtler’s opinion, without telling us how one is to divine how much of an infant’s undifferentiated award is to be regarded as reimbursement for medical expenses, insists that such expenses, despite the express "medical care” language of subdivision 2 of section 104 to the contrary, are to be regarded as "property in excess of his reasonable requirements”. And hardly anything could be more opposite to the provisions of that section than the opinion’s statement that, when an infant becomes "possessed of money” constituting the proceeds of his recovery, it can never be regarded as "money or property in excess of his reasonable requirements”. The "reasonable requirements” spoken of by the statute are not synonymous with the items of damage flowing from a tort for which an infant may recover; that statute merely requires that, though the two are not identical, the one is to be taken into account when the proceeds of the other are disposed of. In my view, it is these clear departures from the comprehensive and comprehensible scheme of the legislation that will leave confusion and not any illogic or asymmetry in the statutes themselves. Indeed, it is noteworthy that the dissenters, while they would prefer to treat section 104-b as substantive rather than facilitative, do not find the statutory scheme confusing.
Accordingly, since, for the reasons already indicated, I believe the disposition articulated in Judge Wachtler’s opinion gives at least some recognition to the kind of balancing of the legitimate concerns of infants with those of the local Departments required by subdivision 2 of section 104, I will *419 concur in that result. (See Switz v Township of Middletown, 23 NJ 580, 614 [Weintraub, J., concurring]; cf. United States v Durham, 475 F2d 208 [Castle, J., dissenting].)

. In that spirit, when the age of majority was lowered to 18 (General Obligations Law, § 1-202), the Legislature expressly provided for a continuation of AFDC benefits to persons over 18 but under 21 who were full-time students. (L 1974, ch 909.)

. Recovery from adults has been based upon various theories, including debt, loan, express contract, and implied contract. (See Graham, Public Assistance: The Right to Receive; The Obligation to Repay, 43 NYU L Rev, pp 485-489; but see City of Albany v McNamara, 117 NY 168 [holding all such aid charitable in nature and hence not recoverable even from the estate of an adult recipient]; see, generally, Characteristics of State Public Assistance Plans Under the Social Security Act, Public Assistance Report No. 50 [US Department of Health, Education and Welfare, 1964 ed].)

. Countless courts have noted that the child’s recovery is intended to recompense him for the physical handicaps and personal suffering the defendant visited on him and to place him on a more equal footing with persons not injured—whether permanently or otherwise—and is not a resource available for his basic support (Galante v Doe, 68 Misc 2d 295; Smith v Lavine, 78 Misc 2d 776; Matter of Woods v Mason, 32 Misc 2d 745; Conigliaro v Rosa, 24 Misc 2d 15; Zambrana v Railway Express Co., 11 Misc 2d 553; Gans v Epstein, 149 NYS2d 80; Leon v Walker, 1 Misc 2d 219; Gaffney v Constantine, 87 NYS2d 131; Matter of Groom, 203 Misc 574; Matter of Stackpole v Scott, 9 Misc 2d 922; Matter of Taff, 61 Misc 2d 602).

. At common law, the infant had no cause of action for medical expenses incurred. Since the duty to supply these necessaries was the parent’s, the infant was permitted to assert the claim only where the parent could not or would not do so. (Natoli v Board of Educ. of City of Norwich, 101 NYS2d 128; 32 ALR3d 1058-1059.) Obviously, where the parent recovers the cost of medical treatment in a derivative suit, the Department may in turn recoup these moneys, treating the parent as a conduit through which a recovery from the defendant is passed. In most cases involving welfare liens, however, and in each of the cases before us, the defendant’s financial responsibility was limited and the parent waived his or her cause of action, leaving us with the problem of the extent to which, if any, recoupment against the defendant may be sought out of funds also claimed by the infant.
It should be noted that, given the statutory authorization to invade the infant’s funds provided to the Department by subdivision 2 of section 104, albeit within limitations, nothing turns on whether the infant has formally pleaded a cause of action for his medical expenses or not. Under a proper reading of subdivision 2 of section 104, moreover, a parent who waived his or her own cause of action for these medical expenditures in order to put funds not really needed by the infant out of the reach of the Department would not succeed, since such funds would be considered "in excess” of the infant’s reasonable requirements as these are defined in subdivision 2 of section 104.