OPINION OF THE COURT
Edmund D. Dane, J.
*374 In this small claims matter the plaintiff, Cynthia Collura, commenced this action against her father, Ronald Collura, Sr., to recover the sum of $4,000 plus interest. The plaintiffs cause of action derives from the defendant’s alleged violation of an infant compromise order executed by Honorable Joseph Saladino of the Supreme Court of Nassau County on October 8, 1992. The defendant filed a counterclaim for $5,000 based upon his daughter’s alleged failure to repay a college tuition loan.
On August 22, 2007 a nonjury trial was held. The plaintiff testified on her own behalf. The defendant presented the testimony of himself, as well as the testimony of his wife. Based upon a preponderance of the credible evidence adduced at the trial, the court makes the following findings of fact and conclusions of law.
Findings of Fact
In 1992, the plaintiffs father commenced a personal injury action on behalf of his minor daughter in the Nassau County Supreme Court. The underlying action resulted from injuries sustained by Cynthia Collura from a bicycle accident. The action was settled by way of an infant compromise order dated November 16, 1992 (see plaintiffs exhibit 1 marked into evidence). Pursuant to the court’s order, the action was settled for the total sum of $6,000. Of that amount $4,000 was to be deposited into the State Bank of Long Island located at 2 Lincoln Avenue, Rockville Centre, New York. The funds were to be held jointly by the defendant (plaintiffs father) and a bank officer for the plaintiffs benefit.
The infant compromise order states, in pertinent part, the following language:
“ORDERED, that the balance of the said settlement to wit:
“The sum of FOUR THOUSAND ($4,000.00) DOLLARS, the balance after attorneys fees shall be paid by the respondent to the parent jointly with an officer of the State Bank of Long Island, located at 2 Lincoln Ave Rockville Centre NY to be deposited in a highest interest bearing account including term deposits in the name of the parent to the credit of the said infant, subject to the further order of this Court, and it is further,
“ORDERED, on presentment of proper proof to the depository that the infant has attained the age of 18 *375 years, the depository shall pay upon demand all monies held in the account to the herein named infant, and it is further . . .
“ORDERED, that upon full compliance with the terms of this Order, the parent be and is hereby authorized and empowered to execute and deliver a General Release on behalf of the infant, and to deliver any other instrument necessary to effectuate the settlement herein.”
The language of the court’s order clearly established that the funds were to remain on deposit until the plaintiff attained the age of 18 years old. At trial, the plaintiff testified that it was her desire to have the funds remain on deposit with the State Bank of Long Island until she became engaged to be married. However, upon her engagement approximately IV2 to 2 years ago, she learned that the funds had not been deposited in the State Bank of Long Island. Rather, her father had deposited the funds at Long Island Savings Bank (now Astoria Bank) in contravention of the infant compromise order (see plaintiffs exhibit 2 [letter from State Bank of Long Island]). The plaintiff further testified that during this period her relationship with her father “fell apart.”
At trial it was conceded by the defendant that he did not deposit the funds with the State Bank of Long Island as required by the infant compromise order. Rather, the funds were deposited at Long Island Savings Bank. Thereafter, the funds were withdrawn by the defendant and used to pay a portion of his daughter’s first semester at SUNY Stony Brook. The remainder of the plaintiffs college expenses were paid by the defendant and his wife by taking a home equity loan.
In support of the defendant’s counterclaim for the sum of $5,000, the defendant testified that he entered into an agreement with his daughter whereby she agreed to repay her college loan after graduation and upon her becoming employed. The defendant testified that his daughter agreed to repay the sum of $50 per week, which, to date has not been paid. The defendant further testified that his daughter “knew what we were spending her money on and that if she objected, she should not have waited so long to ask for her money.”
The court also heard testimony from the plaintiff with regard to the purported loan. The plaintiff testified that, despite her father’s claims, she had no agreement with him to repay her college tuition.
*376 The court further heard the testimony of the defendant’s wife (plaintiff’s mother). Mrs. Collura testified that while her husband may have told his daughter the money was a loan, she did not. Mrs. Collura also testified that while she may have hoped the money was to be repaid, she “didn’t expect it.” Lastly, Mrs. Collura, in glancing at her husband, stated that “we did the best we could.”
Conclusions of Law
Small claims actions in the District Court of Nassau County are to be conducted in an informal manner (UDCA 1804). UDCA 1804 provides, in pertinent part, that:
“The court shall conduct hearings upon small claims in such manner as to do substantial justice between the parties according to the rules of substantive law and shall not be bound by statutory provisions or rules of practice, procedure, pleading or evidence, except statutory provisions relating to privileged communications and personal transaction or communications with a decedent or mentally ill person.” (Emphasis added.)
However, doing substantial justice still requires adherence to substantive law and a reasonable adherence to procedure (Woodson v Frankart Kings Inc., 98 Misc 2d 1101 [Civ Ct, Kings County 1979]). Moreover, doing substantial justice does not mean substantial justice for the plaintiff or the defendant alone, but rather substantial justice for both of the parties (see Schneider v Town of Orangetown, 171 Misc 2d 497 [1997]).
Here, the crux of the dispute lies within the meaning and purpose of CPLR article 12 which governs infant compromise proceedings and whether the defendant’s conduct was a violation of the compromise order. The purpose of infant compromise proceedings brought under article 12 of the Civil Practice Law and Rules is to ensure the safeguarding of funds to which an infant or incapacitated person becomes entitled as the result of a settlement or judgment (Valdimer v Mount Vernon Hebrew Camps, 9 NY2d 21 [1961]; Gold v United Health Servs. Hosps., 95 NY2d 683 [2001]). In accordance with the principle that a court must protect the interests of infants and other wards of the court, no settlement of a ward’s claim is enforceable unless the parties obtain judicial approval of the settlement. The court must scrutinize the fairness and reasonableness of a proposed settlement to ensure that it is in the ward’s best interest (Alex *377 ander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1207). Considerable amount of discretion is permitted by a court in inquiring into the reasonableness and propriety of the settlement of an infant’s cause of action (Maguire v New York R. T. Corp., 141 Misc 807 [1931]).
Moreover, it is well settled that an application for leave to withdraw funds received for the benefit of an infant is not encouraged (Conigliaro v Rosa, 24 Misc 2d 15 [I960]), and should not be granted as mere routine (Levin v United Air Lines, Inc., 279 F Supp 860 [SD NY 1967]), even if the infant consents to the withdrawal. A petition for the expenditure of the funds of an infant must comply with the provisions related to infants, incompetents, and conservatees and must set forth specified information (CPLR 1201, 1211). No authorization will be granted to withdraw such funds, except for unusual circumstances, where the parents are financially unable to support the infant and to provide for the infant’s necessaries, treatment, and education (Conigliaro v Rosa, 24 Misc 2d 15 [I960]). As stated by the court in Matter of Stackpole (9 Misc 2d 922 [Mun Ct 1957]): A petition for withdrawal of an infant’s funds should contain: (1) a full explanation of the reason for the withdrawal; (2) several sworn statements by qualified persons of the estimated costs of the proposed expenditures and the necessity for work to be done; (3) the infant’s age; (4) the date when and the amounts recovered, respectively, by the infant and parent; (5) the amount on hand and earned income; (6) a recital of previous withdrawals and the reasons therefor; (7) a recital of financial circumstances of the infant’s family; (8) a statement that the expenditure cannot be afforded by the infant’s family; (9) the nature of the infant’s injury and present state of health; and (10) any other facts material to the application.
Accordingly, the funds that were the subject of the within infant compromise order dated November 16, 1992 were to be safeguarded by the plaintiffs parents and were to be held for her use and benefit only. The money was not to be withdrawn by plaintiffs father without a court order (Conigliaro v Rosa, 24 Misc 2d 15 [I960]; Levin v United Air Lines, Inc., 279 F Supp 860 [1967]; Matter of Stackpole, 9 Misc 2d 922 [1957]). Although the defendant claims that he withdrew the funds to pay for his daughter’s education, CPLR 1206 (c) clearly mandates that the withdrawal of an infant’s funds can only be done by order of the court.
CPLR 1206 (c) provides that proceeds of a claim that have been “deposited in . . . specified insured banks or trust *378 companies or . . . invested in one or more specified accounts in insured savings and loan associations . . . [are] subject to withdrawal only upon order of the court” (emphasis added).
Moreover, pursuant to the express language of the infant compromise order, the plaintiff was entitled to those funds upon her eighteenth birthday. Nothing in the court’s order can be construed as a directive to withhold payment beyond plaintiffs eighteenth birthday, or, as in this case, upon her engagement to be married, unless, of course, the plaintiff chose to save the money until some later date.
While the court is sympathetic to the financial hardships the defendant faced in supporting a family, the withdrawal of the plaintiff s funds by her father (even if the money was spent on the plaintiff) was improper, as it was in contravention of the court order and in violation of its intended purpose. Moreover, the defendant’s failure to deposit the funds in the State Bank of Long Island, initially, indicates that the defendant did not intend to honor the court’s order from its inception.
The law in this state is well settled that the interests of infants must be safeguarded and protected by our court system (see DeMarco v Seaman, 157 Misc 390 [Sup Ct, Queens County 1934]). In doing so, the Civil Practice Law and Rules creates avenues for the proper withdrawal of funds. Pursuant to article 12 of the CPLR the defendant must have petitioned the Supreme Court of Nassau County for a release of the funds or any portion thereof. Any withdrawal of the funds by the defendant without court review is palpably improper. Even had the withdrawal taken place beyond the plaintiff’s eighteenth birthday, such would be improper, as those funds were not the property of the defendant; rather he was to safeguard them for his daughter’s use.
As the defendant failed to follow the procedures set forth by statute, the court finds that the defendant’s withdrawal of the funds that were the subject of the infant compromise order dated November 16, 1992 was improper. Accordingly, the court grants judgment to the plaintiff in the sum of $4,000 plus interest from November 16, 1992, the date the infant compromise order was entered by the clerk.
Defendant’s Counterclaim is Dismissed
The court will now address the portion of the defendant’s counterclaim which seeks $5,000 for an alleged loan made by the defendant to the plaintiff for the plaintiffs first semester at *379 SUNY Stony Brook in 1998 (see defendant’s statement of counterclaim filed on June 1, 2007).
When pleading a breach of contract claim, “a complaint must allege the provisions of the contract upon which the claim is based” (see Maldonado v Olympia Mech. Piping & Heating Corp., 8 AD3d 348, 350 [2004], quoting Atkinson v Mobil Oil Corp., 205 AD2d 719, 720 [1994]). The purpose of this requirement is to ensure that notice of the transactions, occurrences, or sense of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense are clear to the opposing party.
In the instant case, the defendant testified that his daughter agreed to repay her college loan after graduation and upon her gaining employment. The defendant further testified that the cost of SUNY Stony Brook was $6,000 per semester ($12,000 annually) plus the cost of books. The defendant also stated that his daughter graduated college on or about 1995/1996 and began working. The defendant further stated that he asked his daughter to pay $50 per week. The defendant’s wife, however, testified that she never considered the money spent on her daughter’s college tuition a loan. She further stated that while her husband may have viewed the money as a loan, she did not.
On redirect, the plaintiff testified that she started SUNY Stony Brook in 1997 partly because of her father’s encouragement. She further stated that her father paid for her tuition for college, and that she never agreed to repay any portion of her tuition. She further stated that she became employed as a teacher in 2002.
“[A]ll contracts imply a covenant of good faith and fair dealing in the course of performance” (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]; see e.g. Smith v General Acc. Ins. Co., 91 NY2d 648 [1998]). Moreover, when interpreting the words of a contract, whether written or verbal, “[t]he words . . . must be accorded their fair and reasonable meaning” (Albanese v Consolidated Rail Corp., 245 AD2d 475, 476 [2d Dept 1997] [internal quotation marks omitted]) and the court is to arrive at a construction so that there is a reasonable realization of the parties’ expectations (Partrick v Guarniere, 204 AD2d 702 [2d Dept 1994]).
In the instant case, the defendant has failed to prove by a preponderance of the evidence his breach of contract claim. Specifically, the defendant alleges vague contractual terms, in that the money was to be paid, without a specific date in which *380 payment was to be completed. Furthermore, the defendant does not specify if the plaintiff agreed to his requests prior to entering college or after completion of her degree. It is apparent, based upon the testimony derived at trial, that each party had his or her own interpretation of the events which occurred, thereby proving to the court that there was no meeting of the minds, therefore, no valid contract existed. .
In view of the foregoing, the defendant’s counterclaim is hereby dismissed.