Lbokabd H. Sandleb, J.
This is one of several cases to be litigated in this court in recent years that have in common a central problem of considerable significance. (Knickerbocker Hosp. v. Downing, 65 Misc 2d 278; Mount Sinai Hosp. v. Brinn, 73 Misc 2d 1; Society of N. Y. Hosp. v. Blake, 73 Misc 2d 305.) In these eases, a hospital has rendered costly medical services to needy patients who are in fact eligible for medical assistance in the discharge of the bill. For reasons varying with the facts of the case, the Medicaid payment is not authorized or made. The hospital then sues the patient for the value of the medical services, normally a sum far beyond the patient’s capacity to pay, and the defense is interposed that the hospital has no valid claim against the patient or, alternatively, that any sums found to be due from the patient should be chargeable to the Department of Social Services.
In this case, the defendant, then 18 years old, gave birth prematurely to a baby girl at Fordham Hospital on May 10, 1967. The infant was transferred immediately to Mount Sinai premature baby care unit. The defendant remained at Fordham for several days. The amount here sued for represents the valué of the medical services to the baby.
All discussions with Mount Sinai were conducted not by the defendant, but by her mother, the grandmother of the baby. While aspects of these discussions remain obscure, it is clear that the hospital’s employee learned that the defendant was eligible for Medicaid, and referred her to a representative of the department with an office at the hospital. The grandmother went to the representative, and they started to fill out an application form but did not complete it. The reason for the failure to complete the form is not explained by the evidence.
It is, however, quite clear that the incomplete forms were returned in due course to appropriate employees of the hospital, who took no action whatever with regard to them. No inquiries whatever were made by the hospital, no application was ever filed with the department, and neither the defendant nor her mother was informed of the situation. Indeed, it appears that no bill was ever sent the defendant until some years later, and that bill was not received since the defendant and her mother had moved in the intervening years.
Tn the unusually competent briefs submitted on behalf of the parties, a number of questions of law have been presented, some *304 of them quite interesting, but I am satisfied that one of the issues posed is so -clearly decisive that no valid purpose would be served by discussing the others.
The fundamental purpose of the Medicaid law is set forth in section 363 of the Social Services Law as follows: “ Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare ’ ’. The achievement of that purpose clearly requires the co-operative effort in each instance of the hospital, patient and the department.
Although the responsibilities of the hospital are not defined with adequate clarity in the statute or accompanying regulations, I am satisfied that the situation set up by the statutory pattern imposes on the hospital the duty to ascertain the possible eligibility of the patient -or family, give adequate directions and information, and maintain a sufficient continuing interest to insure that eligible patients or family file the required applications and that appropriate action is taken. These responsibilities follow inexorably from the obvious reality that specialized hospital personnel are almost certain to be far more knowledgeable about the legal requirements than the average patient and also to have an on-going relationship with the department that permits ready correction of misunderstandings or points of confusion.
Nor does this seem to me an unfair or onerous burden to impose on hospitals. The proper discharge of their responsibilities is not only important for the protection of the needy patients. Surely, the hospitals have a very direct interest in being compensated through medical assistance rather than pursuing poor people for money they do not have.
In this case, an employee of the hospital ascertained the fact of eligibility, which indeed could not have been more obvious, and directed the defendant’s mother to the department’s representative. This was a proper discharge of the hospital’s functions.
When the hospital received the incomplete and unexecuted application forms, a clear duty devolved to ascertain what had happened. Indeed, evidence suggested that such inquiries were normal practice, but whether normal practice or not, it was the clear obligation of the hospital and one that in this instance was not discharged.
I am satisfied that, if the hospital had made such inquiries, the problem, whatever it was, would have been straightened out, an appropriate application would have been executed, and *305 this lawsuit would never have come to pass. The failure to make such inquiries, or even inform the defendant or her mother promptly that an application had to be executed, seems to me to require the dismissal of this action. It would completely frustrate the intended purpose of the Medicaid statute to permit a hospital to default so completely in its obligation in a way that forestalled the Medicaid payment and then sue the needy patient or family for the cost of the medical services.
Although not necessary to this determination, the same result would clearly follow from the view, ably expressed by Judge Davis in the Knickerbocker case (65 Misc 2d 278, supra), with which I am inclined to agree, that the department, not the patient, is the primary obligor where eligibility is in fact determined.
In holding for the defendant here, I am not expressing a position on situations where the patient is primarily at fault through withholding or misstating the critical facts, or refusing to co-operate in the application. Nor is it necessary for me to consider the consequences of a failure by the department to authorize payment because of an error in evaluating the facts correctly. Whether an article 78 proceeding by the hospital would then be the appropriate remedy, or the exclusive remedy, is not necessary to decide here.
I should add that in the Society of New York case (73 Misc 2d 305, supra) I determined only that the third-party action against the department should not be dismissed under the circumstances presented, not that the hospital had established an action against the patient.
Judgment may be entered for the defendant with costs and the third-party action is accordingly dismissed without costs.