Regina ROSS, d/b/a Waupaca Rest Home, a proprietorship, Individually and on behalf of all other Wisconsin Nursing Homes whether corporately or Individually owned, similarly situated, Plaintiffs,

v.

The STATE OF WISCONSIN DEPARTMENT OF HEALTH AND SOCIAL SERVICES and Wilbur Schmidt, Secretary of the Department of Health and Social Services, Defendants.

No. 72–C–136.

United States District Court,
E. D. Wisconsin.

Oct. 30, 1973.

Reynolds, Chief District Judge, concurred and filed opinion.

Thomas J. Bergen, Milwaukee, Wis., for plaintiffs.

Robert W. Warren, Atty. Gen. of Wisconsin by Ward L. Johnson, Madison, Wis., for defendants.

Before FAIRCHILD, Circuit Judge, REYNOLDS, Chief District Judge, and GORDON, District Judge.

## DECISION AND ORDER

PER CURIAM.

This class action seeks to have § 146.-30(3)(c) of the Wisconsin statutes and certain administrative rules thereunder declared unconstitutional. Further application and enforcement of the statute is sought to be enjoined. The plaintiffs have, in effect, moved for judgment on the pleadings; the defendants have conceded that resolution by such method is proper, since the only issue presented is the constitutionality of the challenged statute.

Section 146.30(3)(c) of the Wisconsin statutes grants authority to the department of health and social services (hereinafter "department") immediately to withdraw patients who are receiving county or state support from nursing homes under certain circumstances. This can be done when the department "determines that an emergency exists which places the patient's health, safety or welfare in jeopardy" because of a failure by the nursing home to comply with the department's standards.

The challenged regulations create categories of violations of standards and prescribe actions, up to and including patient removal, which are to follow from asserted violations of each category. The standards themselves are found in chapter 32H of the state's administrative code. The statute does not contain any provisions for a hearing so as to enable nursing home administrators to challenge the statements of welfare directors or department inspection personnel (even though those statements are the basis for the department's action) either before or after patient removal.

The plaintiffs allege that the statute and the administrative rules allow deprivation, under color of state law, of rights and privileges secured by the United States Constitution. Specifically, they complain about the removal of patients and the loss to them of government funds for patient care, without an opportunity to be heard in a meaningful manner. The defendants acknowledge that the plaintiffs have "a qualified right to receive public money for support of public welfare patients residing in . . . nursing home[s]." They urge, however, that we must balance the interests of the state against those of the nursing home proprietors. Such a comparison, it is contended, weighs so heavily in favor of the state's interests that notice and an opportunity for a proprietor to be heard regarding patient removal is not constitutionally mandated.

The defendants' "balancing" argument is misplaced in this context. The Supreme Court has stated in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that

> " . . . a weighing process has long been a part of any determination of the *form* of hearing required in particular situations by procedural due process. But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake. See Morrissey v. Brewer, *ante,* [408 U.S. 471] at 481 [92 S.Ct. 2593, at 2600, 33 L.Ed. 2d 484]. We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." 408 U.S. at 570–571, 92 S.Ct. at 2705 (emphasis in the original).

In analyzing the interest involved, we must look to the teachings of *Roth* as a starting point. See City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). *Roth* suggests that the plaintiffs' "liberty" may be in jeopardy here. The charges necessary to call § 146.30(3)(c) into play against a nursing home proprietor arguably "might seriously damage his standing and associations in his community". 408 U.S. at 573, 92 S.Ct. at 2707. See also Wisconsin v. Constantineau, 400 U. S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). We need not decide that question, for, under *Roth,* his "property" interests are clearly implicated.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." 408 U.S. at 577, 92 S.Ct. at 2709.

Nursing home operators do have more than an abstract need or desire to retain patients for whom public support is received, as well as more than a unilateral expectation of so doing. They have a "claim of entitlement . . . grounded in the statute defining eligibility . . . ." 408 U.S. at 577, 92 S.Ct. at 2709. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The fact that the claim may be based on a "privilege" rather than a "right" is no longer relevant. Graham v. Richardson, 403 U.S. 365, 374, 91 S. Ct. 1848, 29 L.Ed.2d 534 (1971). They may also have support for their claim of entitlement in Wis.Stat. § 146.30(7) which appears to require notice and a hearing before license revocation or suspension; patient removal without notice and a hearing may well "limit" the efficacy of a license. See Maxwell v. Wyman, 458 F.2d 1146, 1151 (2d Cir. 1972).

■ We find, therefore, that the interest of the plaintiffs in retaining public assistance patients and receiving the public funds flowing therefrom is within the fourteenth amendment's protection of "property". Section 146.30(3)(c) of the Wisconsin statutes, to the extent that it makes no provision for a hearing concerning patient removal, does not afford due process of law and violates the fourteenth amendment. Consequently, the defendants may not remove patients from the plaintiffs' facilities without affording notice and an opportunity to be heard.

■ With respect to the form of the hearing, we will specify the minimum requirements, but we decline to prescribe otherwise the exact nature it need assume. The hearing must comply with the applicable minimum safeguards set forth in *Goldberg, Morrissey,* and *Scarpelli.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Scarpelli v. Gagnon, 411 U.S. 778, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973). These minimum elements are: (a) timely written notice of the claimed violations; (b) disclosure to the nursing home proprietor of the evidence against him; (c) the right to be represented by retained counsel; (d) an opportunity to be heard in person and to present witnesses and documentary evidence; (e) an opportunity to confront and cross-examine adverse witnesses; (f) a hearing body which is "neutral and detached" in that it does not include persons responsible for investigations of nursing homes or persons who assert charges based on such investigations; and (g) a written statement by the factfinders as to evidence relied on and reasons for the action taken.

■ Normally such a hearing must be afforded *prior* to the termination of any benefits. Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). However, the nature of the government's interest in protecting residents of private nursing homes from true emergency situations posing serious threats to their health and safety may justify different treatment in those situations. Cases involving such true emergencies constitute "extraordinary situations where [a] valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379,

91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

We do not believe it appropriate for this court to attempt to define which of the many possible violations and deficiencies which might be charged would constitute true emergency conditions. We are cognizant of the fact that a grace period follows many charges; such a period interposed between assertion of violative conditions and patient removal certainly suggests that such conditions are not considered so serious as to preclude a pre-removal hearing. Beyond that observation, however, we believe that the state authorities are better equipped to make such determinations.

This is not an abdication of our function, for we realize that ultimately it is the judiciary's obligation to determine if the decisions made are constitutionally supportable. At this stage, however, we assume that the state officials will act in good faith, in accordance with the spirit of the duty entrusted to them, and "neither . . . their expertise nor their assistance in accurately identifying and evaluating the interests at stake [should] be ignored." United States ex rel. Miller v. Twomey, 479 F.2d 701, 719 (7th Cir. 1973).

Therefore, it is ordered that the defendants be and hereby are permanently enjoined from attempting to enforce the provisions of Wis.Stat. § 146.30(3)(c) without affording the plaintiffs notice and an opportunity to be heard prior to patient removal, or, in true emergency situations, within a reasonably short time after removal, all in accordance with the standards set forth in this decision and order.

REYNOLDS, Chief District Judge (concurring).

Section 146.30(3)(c) of the Wisconsin Statutes provides for the withdrawal from a nursing home of any patient who receives county support when "an emergency exists which places the patient's health, safety or welfare in jeopardy." The part of the statute that is at issue is not the withdrawal of the patients but the determination that the nursing home is unsafe or unhealthy. The plaintiffs are entitled to a hearing on the issue of their respective homes being a healthful and safe place because their liberty is put in jeopardy in that their "standing and associations in [the] community" may be seriously damaged by an adverse determination of this issue. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L. Ed.2d 548 (1972). A determination by the Government that a nursing home is unsafe or unhealthy not only damages its standing in the community but also prejudices its ability to attract and retain private patients and thus puts its very existence in jeopardy. Under these circumstances the due process clause of the 14th Amendment prohibits the state from damaging plaintiffs' reputation by making this adverse determination even if county patients are not withdrawn. Such a determination or finding cannot be made without providing some procedural safeguards. *Roth,* supra; see also Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The *Roth* court while upholding the right of a state university to refuse to renew a nontenured teacher's contract without a hearing stressed that the teacher's reputation was not ·damaged nor was he denied access to other teaching jobs. Although the nursing homes here have no "tenured" status, they do have their reputation at stake, and the Government's act of finding them unsafe and unhealthy seriously damages their reputation and ability to function. Such decisions on the part of Government cannot be done arbitrarily.

In Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), it is pointed out that a "consideration of what procedures due process may require under any giv-

en set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Here the precise governmental function that is under consideration is the determination or finding that the nursing homes are unhealthy and unsafe, and the private interest involved is the reputation of the nursing homes.

As I will point out later, I do not believe that the function of the Government as a purchaser of services or of the nursing homes as a seller of services is what is involved. If the Government decides not to purchase these services for any other reason, such as excessive charges, I do not think it would be contended that a due process hearing would be required.

Therefore, I agree with the conclusion reached by the majority but for different reasons.

In particular, I am troubled by the implications of the majority opinion which could be read to say that the state may not discontinue purchasing services from private vendors who have become dependent on it for a large share of their income without giving the vendors the right to a due process hearing. This is a far reaching concept—a concept which imposes many procedures on the purchasing policies of the state which, on this record, I do not think we are justified in imposing upon the state. Of course, if the majority's finding on page 572—"that the interest of the plaintiffs in retaining public assistance patients and receiving the public funds flowing therefrom is within the fourteenth amendment's protection of 'property'" —is correct, then the conclusion reached by the majority is correct. Therefore, one must analyze the nature of the interest that the plaintiffs have, other than the interest in their reputation, to determine whether or not it is the type of property interest that is entitled to the protection of the 14th Amendment.

The plaintiffs do have a private financial interest in selling their services to the state, but this financial interest is unilateral on their part and in no way obligates the state to do more than pay for services rendered to patients. When the relationship between the government and a private individual is that of purchaser and seller, then the terms of the relationship are generally controlled by contractual agreements and not by the United States Constitution. On this record, the plaintiffs have not established that there is something so unique in their relationship, such as something approaching the tenure relationship of teachers, which would bring their interest to the level of property interest under *Roth* in retaining the public assistance patients in their homes. I can conceive of situations where this might be the case—for instance, if private interests built nursing homes with the understanding by the public officials that the nursing homes would receive a certain amount of business from the state—but there is nothing in this record that such a commitment was ever made or implied formally or informally by the state.

According to *Roth*, an individual must have a "legitimate claim of entitlement to" a benefit if his interest is to merit the protection of procedural due process. 408 U.S. at 577, 92 S.Ct. 2701. The majority opinion herein feels that the plaintiffs are entitled to the receipts that they receive, and will receive in the future, for taking care of indigent patients for the same reason that welfare recipients are entitled to benefits as provided for by law—that is, nursing homes have "[a] claim of entitlement * * * grounded in the statute defining eligibility," *Roth*, supra at 577, 92 S.Ct. at 2709, explaining Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The logic of *Goldberg* is inap-

plicable to this case. In *Goldberg*, "eligibility" and "entitlement" were synonymous. If an individual met the statutory criteria for eligibility, he was entitled to the benefits. The statute and the regulations under challenge in this case define eligibility to retain patients under a county plan. The statute does not, however, entitle any particular home to have such patients. The statute imposes no affirmative duty to place patients in any nursing home.

In summation, when determining whether a particular private interest merits the protection of procedural due process, the Supreme Court has very deliberately examined the precise nature of the private interest and that of the Government plus the nature of the relationship between the parties. See, e. g., *Roth*, supra; Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Goldberg*, supra; and *Cafeteria & Restaurant Workers Union*, supra. This examination has always been in light of the particular factual context of each case. *Roth* appears to have established a dichotomy of interests—those interests in one's "liberty" and those in one's "property." A withdrawal of county supported patients after a finding that a home is unsafe or unhealthy without a hearing on the issue of whether it is unsafe or unhealthy infringes upon a nursing home's "liberty" interest in its reputation. I am not able to find a protectable "property" interest in the retention of these patients. At this stage of the proceedings, the relationship between the Government and the plaintiffs appears to be that of purchaser and sellers (they are not acting in their capacities as licensor/licensee), and the plaintiffs have not established any unique factual situation which would justify treating them different from other vendors.

I therefore concur in the result for the above reasons.