In the Matter of PENINSULA GENERAL NURSING HOME, Respondent, v JULE M. SUGARMAN, as Commissioner of the Department of Social Services of the City of New York, et al., Appellants.

First Department, May 17, 1977

*Michael P. Fogarty* of counsel; *Samuel A. Hirshowitz* with him on the brief *(Louis J. Lefkowitz, Attorney-General)*, for appellants.

*John Sherman* of counsel *(Neil Goldman* with him on the brief; *Hayt, Hayt & Landau,* attorneys), for respondent.

LUPIANO, J. Jacob Stupler, now deceased, was admitted to Peninsula General Nursing Home (petitioner), a voluntary not-for-profit nursing home, on October 15, 1973. He resided there until his transfer to a hospital on September 30, 1974. The petitioner nursing home was reimbursed for care and services rendered to Stupler under Medicare for the period October 15, 1973 to January 22, 1974, at which point Medicare benefits were exhausted. Petitioner is a participant in the New York State Medicaid Program which provides for direct payment to be made to participating nursing homes for services rendered by them to eligible individuals under section 366 of the Social Services Law. Medicare having been exhausted, petitioner applied for Medicaid coverage on behalf of Stupler which application was denied by the Social Services Department of the City of New York on the ground that Stupler was ineligible for this assistance because he received $29,684.66 from the sale of his house on April 15, 1974 (Social

Services Law, § 366, subd 1, par [e]). It is averred by petitioner that Stupler conveyed this property to his children on July 9, 1973 for no consideration and that they subsequently sold the premises to a third party for the aforesaid sum. By letter dated September 13, 1974, petitioner requested a fair hearing on its behalf with respect to the denial of the application which it submitted for nursing home care coverage by Medicaid on behalf of Stupler. Petitioner was informed that a fair hearing was scheduled for October 15, 1974 pursuant to a request by Jacob Stupler's family. However, one week prior to this scheduled hearing, petitioner was apparently informed that the children of Jacob Stupler had withdrawn their request for same and that the hearing was canceled. Parenthetically, it appears Jacob Stupler died on September 30, 1974. Petitioner asserts that it should obtain reimbursement under Medicaid for services rendered to Jacob Stupler between January 23, 1974, when Medicare coverage was exhausted, and September 30, 1974, when he left the home. They base this assertion on the claim that the transfer by Jacob Stupler of his real property comes within the "homestead" exemption of section 366 (subd 2, par [a], cl [1]) of the Social Services Law. This claim was never subjected to scrutiny by the Departments of Social Services because of the administrative agencies' unequivocal position that petitioner has no right to a fair hearing.

We are only concerned in this appeal with whether petitioner should be afforded a fair hearing. The merits of petitioner's claim as to the "homestead" exemption are, therefore, not considered.

Although an article 78 proceeding is not the proper vehicle to attack the constitutionality of a legislative enactment, the court is empowered to treat the proceeding as an action for declaratory judgment and proceed accordingly *(Kovarsky v Housing Development Administration of City of N. Y.,* 31 NY2d 184; *Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400; *Matter of Fritz v Huntington Hosp.,* 39 NY2d 339, 347). This is what Special Term did.

Respondents-appellants contend that since section 366 of the Social Services Law and the regulations promulgated thereunder (18 NYCRR 358.1 *et seq.)* are silent concerning the right of a provider of medical services to obtain administrative review of the local agency determination, petitioner lacks standing to request such review. However, in *Boryszewski v*

*Brydges* (37 NY2d 361, 364), the Court of Appeals declared: "We are satisfied that the time has now come when the judicially formulated restriction on standing (which we recognize has had a venerable existence) should be modified to bring our State's practice with respect to review of State legislative action into conformity not only with the practice in the majority of other States but also with the procedural standing of taxpayers to challenge local actions (General Municipal Law, § 51). We are now prepared to recognize standing where, as in the present case, the failure to accord such standing would be in effect to erect an impenetrable barrier to any judicial scrutiny of legislative action." Under the standard enunciated in *Boryszewski v Brydges (supra)*, petitioner does not lack standing to challenge the constitutionality of section 366 of the Social Services Law and the regulations adopted thereunder.

The fundamental purpose of the Medicaid law is set forth in section 363 of the Social Services Law as follows: "Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare". The achievement of that purpose clearly requires a co-operative effort in each instance of the hospital, patient and the social service department *(Mount Sinai Hosp. v Kornegay,* 75 Misc 2d 302). Under the Medicaid program, payment is made directly to the provider of medical services (here, the nursing home), not the patient. Petitioner persuasively argues that no rational basis exists to preclude the party with the real interest in receiving reimbursement from obtaining a fair hearing on the issue of whether the patient who is receiving care is eligible for medical benefits. Certainly, a facility that has met its obligation by providing services to the indigent who himself does not challenge the determination denying eligibility should be afforded an opportunity to review the determination rather than being left no recourse for compensation.

As aptly observed in *Howe Ave. Nursing Home v Nafus* (54 AD2d 686, 687): "However, section 366 of the Social Services Law, and the regulations adopted pursuant thereto, to the extent that they fail to furnish medical providers an opportunity for a fair hearing (after county denial of eligibility), constitute a denial of due process and violate the Fourteenth Amendment to the United States Constitution and the corresponding provisions of the State Constitution (see *Matter of*

*Peninsula Gen. Nursing Home [Sugarman],* NYLJ, June 5, 1975, p 2, col 6; *Coral Gables Convalescent Home v Richardson,* 340 F Supp 646; *Ross v State of Wisconsin Dept. of Health & Social Servs.,* 369 F Supp 570; see, also, *Mount Sinai Hosp. v Kornegay,* 75 Misc 2d 302; *Knickerbocker Hosp. v Downing,* 65 Misc 2d 278)."

To reiterate, the Department of Social Services *at no time* opposed the request for a fair hearing initiated by the family of Jacob Stupler to obtain an administrative adjudicative determination of the eligibility status of the patient, Jacob Stupler. Jacob Stupler having died, the family withdrew such request and the department now utilizes this fact to frustrate the attempt by the petitioner nursing home to obtain such hearing. In an effort to sustain the denial of a hearing, the Department of Social Services claims that the petitioner has an adequate remedy at law which argument finds favor with our dissenting brethren who opine that "a cause of action may be spelled out *against the ineligible* or even against the governmental agency designated to declare ineligibility" (emphasis supplied). A review of the cases cited in the dissent (some of which are cited in *Howe Ave. Nursing Home v Nafus, supra* upon which we rely) and which the dissent attempts to factually distinguish, discloses legal principles and legal reasoning fully supportive of our conclusion that petitioner is entitled to a fair hearing as a matter of due process. In *Coral Gables Convalescent Home v Richardson* (340 F Supp 646), the plaintiff nursing home, a provider of services under the Medicare Act (US Code, tit 42, § 1395 *et seq.)* in a suit against the United States Department of Health, Education and Welfare, contended that a fiscal intermediary between the department and the plaintiff for the purpose of administering payments to the plaintiff for the reasonable costs of plaintiff's services in the Medicare program, unilaterally determined that plaintiff was receiving reimbursement to which it was not entitled. Recoupment was obtained by a 50% reduction in continuing payments, all without benefit of any administrative hearing because there is no provision in the Medicare Act or in rules and regulations promulgated for administrative review of provider cost determinations made by fiscal intermediaries. Similarly, neither section 366 of the Social Services Law, nor its attendant regulations herein provide for a fair hearing to a provider of services. Similarly, both petitioner herein and plaintiff in *Coral Gables* contend that the failure to afford

such administrative hearing deprives them of due process of law "in the taking of [their] 'earned property right' without adequate Fifth Amendment protections. Procedural due process protections apply, of course, where there has been interference with a property right. In this case the right in question is plaintiff's right to reimbursement for costs already incurred in providing * * * services. First, it is argued that Goldberg v Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), and its progeny require that plaintiff be afforded procedural due process. *Goldberg* held that state welfare recipients were entitled, under the Fourteenth Amendment, to an evidentiary hearing before termination of * * * benefits. In the wake of *Goldberg,* procedural protections have been required in a number of new areas. While not all courts have joined in this judicial renovation of administrative procedures, there is a clearly defined trend toward extension of fair hearing requirements * * * Plaintiff could, of course, argue that the condition of the ultimate beneficiaries of the Medicare program, the sick and the aged, highlights the need for a hearing. If an unjust and incorrect determination is made * * * plaintiff might be forced to close its doors by the revenue loss. This would result in one less provider able to offer services * * * But plaintiff need not rely on this argument. *Goldberg,* even if not applicable here, typifies the recent expansion of Fifth Amendment protections. *A fundamental operative principle in administrative law 'is that a person aggrieved by the action of a government agency has a constitutional right to a trial-type hearing on issues of adjudicative fact'* * * * [T]he Medicare Act * * * neither requires *nor* proscribes a hearing in the situation at issue * * * It would distort the language of the Act to hold that [it] prohibits any evidentiary hearing * * * [T]he failure to afford plaintiff * * * a post-reduction hearing constituted a denial of due process" *(Coral Gables Convalescent Home v Richardson, supra,* pp 648-650). Similarly, as in *Coral Gables,* the statute herein does not proscribe a fair hearing to a provider of services.

In *Ross v State of Wisconsin Dept. of Health and Social Servs.* (369 F Supp 570), the Wisconsin statutes permitted the Department of Social Services to withdraw patients receiving State or county support from nursing homes when the department determines that the nursing home failed to comply with department standards. No provision was contained in the statute to afford the nursing home provider of services a

hearing whereby the home could challenge the administrative action whether before or after patient removal. Plaintiffs, nursing home proprietors, in a class action contended that (p 571) "the loss to them of governmental funds for patient care, without an opportunity to be heard in a meaningful manner" constituted a "deprivation, under color of state law, of rights and privileges secured by the United States Constitution." The Federal court observed (pp 571-572): "The Supreme Court has stated in Board of Regents v Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) that '* * * a weighing process has long been a part of any determination of the *form* of hearing required in particular situations by procedural due process. But, to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake * * * We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property' * * * The fact that the claim may be based on a 'privilege' rather than a 'right' is no longer relevant * * * We find * * * that the interests of the plaintiffs in retaining public assistance patients and receiving the public funds flowing therefrom is within the fourteenth amendment's protection of 'property'".

Interestingly, the dissent adopts *in part* the analysis not of the majority in *Ross,* but of the concurring opinion of Chief District Judge REYNOLDS. Even in that concurrence, it is recognized that the plaintiffs, nursing home proprietors, have a financial interest which obligates the State to pay for services rendered to public assistance patients (p 574).

Insofar as the dissent suggests that petitioner is relegated to a plenary suit for breach of contract against the patient for services rendered the patient in expectation of payment, such conclusion would appear to be subversive of the legislative scheme set out in title 11 of the Social Services Law entitled "Medical Assistance for Needy Persons" (L 1966, ch 256, eff April 30, 1966). The commencement of such a suit against a patient unilaterally determined by an administrative adjudication to be ineligible, but who upon a fair hearing might well secure reversal of such adjudication because he is, in fact, indigent, would require such patient, unable to pay for his medical care and assistance, to defend himself in a lawsuit brought to recover the charges for the very thing he is too indigent to pay. Of course, respondents-appellants herein will answer that the patient has standing to secure his rights and

privileges by requesting a fair hearing. This is the "nub" of this case. What if the patient is dead and his family or estate do not pursue the matter either out of intention or lack of knowledge or information? What if the patient is alive, but does not pursue the matter either out of intention or lack of knowledge or information?

In its declaration of objects, the Legislature declared: "In carrying out this program every effort shall be made to promote maximum public awareness of the availability of, and procedure for obtaining, such assistance, and to facilitate the application for, and the provision of such medical assistance" (Social Services Law, § 363). Again we note that the achievement of this purpose requires the co-operative effort of the department, the patient and the provider of services. The provider of services, in that it has a most direct interest in being compensated through medical assistance rather than pursuing poor people for money they do not have, is obviously in the best position to furnish information and to maintain a sufficient continuing interest to insure that eligible patients or their families file the requisite applications and take appropriate action to secure that eligibility. Clearly, the provider of services is more likely to possess that specialized knowledge respecting the relevant legal requirements than is the average patient. Further, the provider of services is most likely to have an on-going relationship with the department that would permit of ready correction of confusion, misunderstanding or error (see *Mount Sinai Hosp. v Kornegay,* 75 Misc 2d 302, 304, *supra).* Without doubt the beneficiaries of title 11 of the Social Services Law (§ 363 *et seq.)* are poor people, of limited resources, not likely to be sensitively aware of when they require legal help or to have quick access to such aid. Upon an administrative adjudication of ineligibility the prompting of the dissent would foist upon the provider of services, assuming lack of co-operation by the patient or his family for one reason or another, the choice, where feasible, of ceasing to provide services or, in providing services, to undertake the burden of a lawsuit to recover for same. It is apparent that inextricably bound up in the legislative scheme delineated in title 11 are the relationships and consequent adjudications of the rights and responsibilities not only of the patient and the department, but also of the provider of services as well. (See *Society of N.Y. Hosp. v Blake,* 73 Misc 2d 305, 308.) Indeed, in *Matter of St. Clare's Hosp. v Breslin* (19 AD2d 922, 923) in

considering section 187 of the Social Welfare Law (now embodied in sections 365-a and 367 of the Social Services Law), it was observed that "the legislative purport * * * is both to insure treatment for those who cannot provide such treatment for themselves and, at the same time, assure payment to the hospital of its bill by the welfare district if the patient is indigent." We must not lose sight of the fact that "the brutal need of the recipient erroneously denied assistance will make him all the less able to pursue the subsequent hearing now available" and that "[w]hen an administrator finds or suspects a welfare recipient is no longer eligible and cuts off assistance, adjudicative and not legislative facts are plainly at issue" (Note, Withdrawal of Public Welfare: The Right to a Prior Hearing, 76 Yale LJ 1234, 1244, 1237). Both due process and the salutary public policy underlying title 11 of the Social Services Law mandate that petitioner be afforded a fair hearing.*

Finally, in *Amsterdam Mem. Hosp. v Cintron* (52 AD2d 404, 407) it was observed that "[a]s a matter of law, the statutory intent is that the [provider of services] must look to the appropriate social services agency for payment and may no longer simply rely upon * * * a guarantee of payment exacted from an individual upon admission of the eligible

---

* A further basis for affording petitioner a fair hearing on the issue of eligibility of Jacob Stupler arises from the unique circumstances of this case. Respondents do not deny, but merely disclaim knowledge or information sufficient to form a belief as to the assertion by petitioner that on February 14, 1974 it applied on behalf of Jacob Stupler for Medicaid coverage. Apparently no guarantee of payment was obtained from any other person or member of Stupler's family by petitioner on the representation that Stupler was eligible for Medicaid coverage. No response was received. Consequently, over four months later petitioner on June 21, 1974 renewed its application for Medicaid coverage. In a notice dated August 26, 1974, the Department of Social Services denied eligibility on the basis that on April 15, 1974, Stupler conveyed certain real property (i.e., he allegedly sold his home for $29,684.66) and that the proceeds could be used to reimburse petitioner for services provided. Medicare benefits having been exhausted on January 22, 1974, it would follow that for the period commencing at that time and up to the transfer of the real property, no issue was seized upon which would serve to frustrate Stupler's claim to eligibility. If the Department of Social Services had acted with reasonable dispatch on petitioner's original request, it appears that during this initial period Stupler would have been determined to be eligible. If Stupler had been initially found eligible and subsequently found ineligible, clearly petitioner would be entitled to a fair hearing. The negligence, if such there be, in failing to expedite requests for eligibility determinations made by a provider of services on behalf of a patient, on the part of the administrative agency may not serve to bootstrap a delayed determination denying eligibility into an unassailable administrative determination foreclosing the provider of services from a fair hearing.

person * * * In the absence of specific notice to patients that the vendor of services does not accept Medicaid or social services responsibility in *any* case, recipients of such services and their well-intentioned individual guarantors of payment cannot be held responsible for payment in any form compatible with the appropriate provisions of the Social Services Law *when the patient is eligible for such service.*" (Emphasis supplied.)

To frustrate petitioner's claim to a fair hearing by the Department of Social Services under the circumstances herein with the admonition that petitioner can obtain relief in a plenary action against the patient (in this case his estate) or in a plenary action against the department is to exalt form over substance and to render suspect the balance of property interests and equities envisioned in the legislative enactment to obtain requisite medical assistance for needy persons.

Judgment, Supreme Court, New York County (HUGHES, J.), entered September 5, 1975, which granted petitioner-respondent's application declaring that to the extent section 366 of the Social Services Law and the regulations thereunder do not provide petitioner the opportunity for a fair hearing to challenge the administrative determination denying eligibility for medical assistance to a patient, the statute and the regulations do not afford petitioner due process of law and are unconstitutional and directing the petitioner be afforded such fair hearing, should be affirmed, without costs and disbursements.

LANE, J. (dissenting). Peninsula General Nursing Home was a participant in the New York State Medicare program and, as such, received direct payment from the program for services rendered to eligible individuals. Peninsula provided services to Jacob Stupler from October 15, 1973 to September 30, 1974 and was reimbursed for those services through the program for the period of October 15, 1973 through January 22, 1974.

When Medicare payments were exhausted, application was made for coverage under the Medicaid program, which was denied on the grounds of the ineligibility of the patient, Jacob Stupler. His ineligibility was based upon alleged improper transfer of title by Stupler of residential real property to his children immediately prior to his applying for benefits, in violation of section 366 (subd 1, par [e]) of the Social Services Law. The Stupler family's request for a fair hearing was

withdrawn after his death on September 30, 1974. Peninsula requested a fair hearing on the very same issue. This request was denied by the Department of Social Services.

Peninsula instituted this article 78 proceeding in order to annul the determination of the respondents that Stupler was ineligible and to obtain a direction that Peninsula is entitled to and should be afforded a fair hearing.

Peninsula's position was that it had a right to administrative review of its claim, and denial of that right operates to deprive it of its property without due process of law. The position of the respondents was that there is no basis for the hearing requested and that Peninsula had an adequate remedy at law in the form of a plenary suit against the City of New York.

Special Term, after reviewing the contentions of the parties, granted the petition to the extent of declaring that the Social Services Law and attendant regulations to the extent that they do no afford a fair hearing to providers of services are unconstitutional and directed that Peninsula be afforded a fair hearing. I would reverse.

The statute (Social Services Law, § 363) articulates the objectives of affording aid to the needy by stating: "Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare and for promoting the state's goal of making available to everyone, regardless of race, age, national origin or economic standing, uniform, high-quality medical care. In furtherance of such goal, a comprehensive program of medical assistance for needy persons is hereby established to operate in a manner which will assure a uniform high standard of medical assistance throughout the state. In carrying out this program every effort shall be made to promote maximum public awareness of the availability of, and procedure for obtaining, such assistance, and to facilitate the application for, and the provision of such medical assistance."

Neither section 366 of the Social Services Law nor its attendant regulations provide for a fair hearing to a provider of services under circumstances such as those extant in the case at bar. Section 366 of the Social Services Law provides:

"1. Medical assistance shall be given under this title to a person who requires such assistance and who

"(a) either (1) is receiving or is eligible for home relief * * * or

"(2) is receiving or is eligible to receive federal supplemental security income payments and/or additional state payments, ·so long as there is in effect an agreement between the state and the secretary of health, education and welfare, pursuant to section three hundred sixty-three-b of this title, for the federal determination of eligibility of aged, blind and disabled persons for medical assistance, and so long as such secretary requires, as a condition of entering into such agreement, that such person be eligible for medical assistance"

18 NYCRR 358.4 provides that:

"The following persons shall be entitled to a fair hearing:

"(a) Applicants for or recipients of aid to dependent children, aid to the aged, blind or disabled, medical assistance for needy persons, home relief or veterans assistance on the following grounds: * * *

"(4) discontinuance or suspension of assistance, in whole or in part".

Peninsula as a provider of services does not come within the purview and cannot claim the benefit of the statute or the regulations. The administrative agency involved took the view that there was no necessity to afford a hearing to the petitioner in view of the remedy available to it in the form of a plenary suit. We are bound to give the interpretations of an administrative agency great respect if they are within rational and reasonable bounds (Matter of Howard v Wyman, 28 NY2d 434, 438; Matter of Sigety v Ingraham, 29 NY2d 110, 114).

On this basis alone, I submit that the petition in the case at bar should have been dismissed. I am furthermore of the view that Peninsula, on the merits, is not entitled to an administrative hearing.

I do not quarrel with the position taken by the majority of this court that "the party with the real interest in receiving reimbursement" for expenses of medical care is entitled to a fair hearing when such reimbursement is denied or restricted. I do, however, maintain that the interested party within the intendment of the statute is the "eligible," as defined in section 366 of the Social Services Law and not the provider of services.

A provider such as the petitioner is entitled to payment only to the extent that it has afforded goods or services to an

"eligible." If, as in the case at bar, it develops that services have been provided to one deemed ineligible for benefits, a cause of action may be spelled out against that ineligible or even against the governmental agency designated to declare ineligibility. However, vindication of that claim, available as it is in a plenary suit, need not be afforded through the medium of administrative review.

To the extent that my views, as herein expressed, differ, I respectfully disagree with the conclusion of the Appellate Division, Second Department, in *Howe Ave. Nursing Home v Nafus* (54 AD2d 686, 687), and the majority of my brethren who rely on that case to support their position.

I must note that those cases in other jurisdictions (some of which are cited in *Howe Ave.)*, which hold that a provider of services is entitled to an administrative hearing, deal with situations far different from the case at bar. *Coral Gables Convalescent Home v Richardson* (340 F Supp 646) and *Wilson Clinic & Hosp. v Blue Cross of South Carolina* (494 F2d 50) involve a dispute over the auditing of a nursing home's cost reports. *Ross v State of Wisconsin Dept. of Health & Social Servs.* (369 F Supp 570) involves enforcement of statutes against nursing homes failing to meet minimum standards. The common thread in these cases is that direct attack on the nursing homes required provision for direct participation of the homes involved to rebut allegations made directly against them.

Similarly, in the Third Department, in the case of *Matter of White Plains Nursing Home v Whalen* (53 AD2d 926, 927), a hearing was afforded. However, in that case as well, the hearing involved a dispute over rate reimbursement, a matter directly involving the nursing home. The nursing home in our case, as in the *Howe Ave.* case (54 AD2d 686, *supra)*, was only indirectly involved in that there was an expectation of payment to it through the provisions made for an alleged "eligible." They did not have a claim of entitlement grounded in a statute defining eligibility *(Goldberg v Kelly,* 397 US 254, 262) but, rather, had only a "unilateral expectation" of a benefit, which is not a property interest protected by procedural due process *(Board of Regents v Roth,* 408 US 564, 577; cf. *Matter of Sigety v Ingraham,* 29 NY2d 110, 115; *Matter of White Plains Nursing Home v Whalen, supra).* The unilateral private financial interest of the nursing home in recovering expenditures made for services rendered creates a relationship

of purchaser and seller. A breach of this relationship would give rise to a plenary suit for breach of contract and would not—and should not—give rise to interpretation of questions of constitutional dimensions *(Ross v State of Wisconsin Dept. of Health & Social Servs., supra,* p 574, concurring opn per REYNOLDS, Ch. J.).

Accordingly, the judgment of the Supreme Court, New York County (HUGHES, J.), entered September 5, 1975, granting petitioner's motion to declare section 366 of the Social Services Law unconstitutional and directing that petitioner obtain a hearing, should be reversed on the law and the petition dismissed.

SILVERMAN and YESAWICH, JJ., concur with LUPIANO, J.; MURPHY, P. J., and LANE, J., dissent in an opinion by LANE, J.

Judgment, Supreme Court, New York County entered on September 5, 1975, affirmed, without costs and without disbursements.