OPINION OF THE COURT
Bernard F. McCaffrey, J.
The issue presented in this case is whether the petitioner, as a foster care parent, has a right to administrative review by the State Commissioner of the adequacy of foster care payments which were made to her on behalf of children who are no longer in her care. In the fair hearing decision the Commissioner of the New York State Department of Social Services held that petitioner does not have standing to obtain administrative review of the adequacy of such payments.
Petitioner seeks judicial review of a decision after fair hearing that held that she lacked standing to seek review of the rates of foster care payments made on behalf of foster children no longer in her home.
The Social Services Law provides for possible reimbursement to foster parents at either a "regular”, "special” or "exceptional” rate based on schedules determined by local social services districts here in the New York City Department of Social Services (18 NYCRR part 427). The special and *463 exceptional rates are potentially available for children who are defined as needing special or exceptional services.
Petitioner Joyce Deem was the foster care mother for nine children. At the time of the hearing two children still resided with her. Both of these children had previously been remanded to the custody of the local agency as a result of a neglect finding by a Family Court. Accordingly, the State Commissioner remanded the two children’s cases back to the New York City Department of Social Services for a determination whether they were entitled to foster care payments at the special rate during any or all of the time during which petitioner had provided for their care.
Five other children for whom petitioner cared during various times between 1987-1990 had also been remanded to the agency as the result of neglect findings by a Family Court before being placed with petitioner. Petitioner was paid at the regular foster care payment rate for the time during which she cared for these children. However, at the time of the petitioner’s hearing (October 1992) these children had all left petitioner’s home.
Petitioner also cared for two other children for various time periods during 1989-1991. The regular rate of foster care payments was made for these children as well and they, too, already had left petitioner’s care at the time of the hearing.
With respect to all those children who were no longer in petitioner’s care, the State Commissioner denied petitioner’s request for a fair hearing on the ground that the State Commissioner lacked jurisdiction to review the adequacy of payments made on behalf of children who were no longer in petitioner’s home. The State Commissioner stated in her decision: "The record in this case establishes that seven of the foster children in question no longer reside in the Appellant’s household. The right to a fair hearing is personal to the applicant/recipient of public assistance, care and services. The recipients of the foster care maintenance payments are the foster children and the appellant in this case is the provider of services. In the situation where the foster child is in the appellant’s household it is understood that the foster parent is appearing on behalf of the minor child and that the appellant is seeking administrative review of the adequacy of the maintenance payments paid on the child’s behalf. In this situation the appellant is not appearing on behalf of the children no longer in her household and any directive to provide a retro *464 active payment to the former foster care parent under this circumstance would only benefit the provider and could not possibly serve the needs of the child for whom the maintenance payments are made. This decision therefore does not address the issue of the adequacy of the foster care payments made to the children no longer in the household since appellant does not have standing per 358-3.1 to pursue administrative review of this issue as she is neither an applicant or recipient of services. The appellant can pursue judicial redress against the agency based on any perceived contractual rights.”
Petitioner subsequently commenced the within CPLR article 78 proceeding seeking to reverse and annul the aforementioned determination as arbitrary and capricious, and related relief. Petitioner’s application is primarily premised upon a number of similar determinations in New York City involving nonparties between January 27, 1992 and November 6, 1992 which granted standing to seek retroactive awards despite the children’s departure.
The petition sets forth six claims for relief. The first and fifth claims are asserted only as against respondent Barbara Sabol, Commissioner of the New York City Department of Social Services. The second claim alleges that the decision is arbitrary and capricious insofar as it denied petitioner standing to review the adequacy of foster care payments for children who no longer reside in her home. The third claim alleges that the denial of standing violates the Due Process Clauses of the United States and New York State Constitutions. The fourth claim alleges that the denial of standing to petitioner, where other claimants have been afforded standing, constitutes a denial of equal protection. The sixth claim asserts a violation of 42 USC § 1983.
In sum, respondents’ argument is that the children’s right to foster care payments is personal and, therefore, after their departure, retroactive payments would only benefit the former foster care parents. Consequently, even though payment is being sought for a period during which the children were admittedly with the foster parents, they have been determined not to be "recipients” entitled to administrative review.
Social Services Law § 22 (1) provides "[A]ny person described in subdivision three in this section, or any individual authorized to act on behalf of any such person, may appeal to the department * * * of social services officials.” Subdivision (3) states
*465 "[p]ersons entitled to appeal * * * shall include:
"(a) Applicants for or recipients of * * * any service authorized or required to be made * * * pursuant to the provisions of this chapter.”
The implementing regulations provide, inter alia,
"(a) [a]n applicant or recipient has the right to challenge certain determinations or actions of a social services agency * * * by requesting that the department provide a fair hearing. The right to request a fair hearing cannot be limited or interfered with in any way.
"(b) If you are an applicant or a recipient of assistance, benefits or services you have a right to a fair hearing” (18 NYCRR 358-3.1).
"Recipient” is defined as "a person who is, or has been, receiving a covered program or service * * * including] a former recipient seeking to review a determination of a social services agency and who would have a right to a hearing under section 358-3.1 of this Part if such person were a current recipient” (18 NYCRR 358-2.18). The controlling Federal statute, 42 USC § 672, is consistent.
Fairness and common sense would appear to favor the granting of the relief sought by petitioner. However, this court is constrained to deny the petition pursuant to the Court of Appeals majority opinion in Matter of Peninsula Gen. Nursing Home v Sugarman (44 NY2d 909).
The court notes that apparently this case is but one of numerous other similar article 78 proceedings throughout the State some of which have been determined with conflicting results and will undoubtedly result in costly protracted time-consuming appeals. In the final analysis it will probably result in, at best, a Pyrrhic victory for the Social Services Department. The purpose of establishing an administrative procedure for fair hearings was not only to provide for expedited reviews of determinations effecting persons who can least afford the costs of the alternative court remedy of a plenary proceeding but also to provide the department with an in-house alternative dispute determination procedure.
It would appear that the statutory mandate embodied in Social Services Law § 20 (2) (a) relating to the Social Services Department administering the public welfare work of the State would be best served in furthering a more productive and fairer relationship between the department and the foster *466 parents by revising the applicable rules and, if necessary, seek legislative enactment to eliminate the technical barriers concerning the issue of standing for foster parents at fair hearings.
In this respect even a cursory review of the 18 NYCRR 358-3.1 "Right to a fair hearing” shows a very liberal and encompassing listing where the petitioner is entitled fair hearing standing and is the provider of the services rather than the technical recipient of the services such as:
"(c) As the sponsor of an alien receiving food stamp benefits and for whom there has been an over-issuance of benefits for which you are liable, you have a right to a hearing * * *
"(d) As a relative or friend of a deceased person, you have a right to a fair hearing if you have paid for the burial arrangements of such deceased person and your claim for reimbursement made pursuant to section 141 of the Social Services Law is denied by the local social services agency.” (Emphasis supplied.)
However, as previously noted, this court is constrained to deny the petition in accordance with the Court of Appeals decision in Peninsula (supra). Thus, while the children would appear to benefit, at least indirectly, by the foster parent’s expenditures in reliance upon an expectancy, as the real parties in interest, of repayment, the Court of Appeals, interpreting a virtually identical statutory and regulatory scheme involving Medicaid, has determined that a "provider” of services has no independent right to an administrative hearing (Matter of Peninsula Gen. Nursing Home v Sugarman, 44 NY2d 909, revg 57 AD2d 268; Long Beach Mem. Nursing Home v D'Elia, 108 AD2d 901 [2d Dept 1985]; Matter of North Shore Univ. Hosp. v D’Elia, 71 AD2d 991).
Thus, pursuant to the holding in Peninsula (supra), the "provider” of services, whether hospital or foster parent, maintains only a " 'unilateral expectation’ ” of recovery which is not a property right protected by procedural due process (Matter of Peninsula Gen. Nursing Home v Sugarman, supra, at 280). Contrary to petitioner’s contentions, the fact that foster care maintenance rather than Medicaid payments and natural instead of artificial (i.e., corporate) persons are involved here, does not compel a contrary result.
Nor, was the denial of standing a violation of administrative stare decisis (Matter of Field Delivery Serv. [Roberts], 66 NY2d 516 [1985]) or of a petitioner’s rights to equal *467 protection. As delineated in the April 8, 1993 affidavit of Henry L. Pedicone, Jr., Assistant Counsel in charge of the office of administrative hearings, prior to a November 13, 1992 "clarification”, the New York City region erroneously allowed former foster care parents standing to seek retroactive review of payments. The determinations relied upon by petitioner were issued during this period. As a result of the conflicting administrative determinations, however, no clear precedent was established to violate (cf., Matter of Howard Johnson Co. v State Tax Commn., 65 NY2d 726). Moreover, the rationale for this policy is to ensure that a reviewing court will be able to determine whether the agency validly changed its position or simply overlooked or ignored its precedent (Matter of Field Delivery Serv. [Roberts], supra). On the present set of facts, the record contains an ample explanation of respondent’s determination. To remand the matter simply so that the agency could reiterate this conclusion (Matter of Long v Perales, 172 AD2d 667 [2d Dept 1991], lv denied 78 NY2d 854) would be contrary to both judicial and administrative economy.
Finally, the existence of previous inconsistent and erroneous administrative determinations, by themselves, do not establish an equal protection violation (United States v Bell, 506 F2d 207, 221). Those determinations were based not upon an unjustified differentiation in classes of foster parents but upon a mistaken interpretation of the law. Indeed, an administrative agency is mandated to correct an erroneous legal interpretation or unusual policy (Matter of AT&T Information Sys. v Donohue, 113 AD2d 395 [3d Dept 1985]).
Petitioner’s final claims pursuant to 42 USC § 1983 and CPLR article 86, for attorney’s fees, are denied with leave to renew in any subsequent breach of contract action. An award of fees is only available to a prevailing party (Texas Teachers Assn. v Garland School Dist., 489 US 782 [1989]).
Thus, although petitioner does not have a right to a fair hearing, she does not lack a remedy and, as noted by respondent, she can, and did, commence an action against the New York City Department of Social Services, the party alleged to be responsible for insuring that she received foster care payments.
Accordingly, respondent Bane’s determination denying petitioner administrative standing as to those children no longer in her care was rationally based (Matter of Watkins v Toia, 57 AD2d 628, 629, affd 46 NY2d 773; Matter of Penn v Board of *468 Educ., 34 NY2d 222, 231) and neither arbitrary nor capricious. Petitioner’s article 78 petition is, therefore, dismissed with leave to renew as. a plenary breach of contract action against the appropriate entities (Matter of Peninsula Gen. Nursing Home v Sugarman, 57 AD2d 268, 280 [1st Dept 1977], supra; Long Beach Mem. Nursing Home v D’Elia, 108 AD2d 901 [2d Dept 1985], supra; New York Hosp.—Westchester Div. v Krauskopf, 98 AD2d 667 [1st Dept 1983]; Calvary Hosp. v D’Elia, 95 AD2d 817 [2d Dept 1983]; Matter of Little Flowers Children’s Servs. v New York State Dept. of Social Servs., 173 AD2d 191 [1st Dept 1991]; Matter of Flowers v Perales, 140 AD2d 136 [2d Dept 1988]).