OPINION OF THE COURT
Edward H. Lehner, J.
The issue presented in this CPLR article 78 proceeding is *908 whether respondent Commissioner of the New York State Department of Social Services (DSS) was arbitrary and capricious in denying petitioner, a foster care parent, standing to seek administrative review of the adequacy of foster care payments on the grounds that the subject children were not in her care on the date that she requested the hearing.
Petitioner contends that the respondent’s recent interpretation of the statute and DSS regulations was irrational, unreasonable, beyond his jurisdiction and violative of the State Administrative Procedure Act and of petitioner’s rights under Federal law, and to due process and equal protection under the United States Constitution. Ultimately, petitioner seeks a fair hearing to review the adequacy of foster care payments made on behalf of the subject children.
Respondent, on the other hand, argues that his interpretation of the statute and regulations is rational and reasonable because the right to a fair hearing is personal to the foster child and may only be exercised by the foster parent when the child will benefit by reason of being in the care of the parent.
The right to an administrative determination of a dispute with respect to foster care payments through a fair hearing by DSS is prescribed in Social Services Law § 22, which provides in part:
"1. Any person described in subdivision three of this section, or any individual authorized to act on behalf of any such person, may appeal to the department from decisions of social services officials * * *
"3. Persons entitled to appeal to the department pursuant to this section shall include:
"(a) Applicants for or recipients of aid to dependent children, emergency assistance for families with dependent children, home relief, veteran assistance, medical assistance for needy persons and any service authorized or required to be made available in the geographic area in which such person resides, pursuant to the provisions of this chapter * * *
"(f) Other persons entitled to an opportunity for fair hearings pursuant to regulations of the department * * *
"8. The department shall promulgate such regulations, not inconsistent with federal or state law, as may be necessary to implement the provisions of this section.”
The terms "applicant” and "recipient”, as used in the foregoing section, are defined in 18 NYCRR 358-2.7 and 358-2.18 as follows: fl'Applicant means a person who has applied *909 for public assistance, medical assistance, HEAP, food stamp benefits, or a service.” "Recipient means a person who is, or has been, receiving a covered program or service.”
In dismissing petitioner’s application for higher reimbursement, respondent’s designee wrote in a decision dated April 9, 1993:
"The right to a fair hearing is personal to the applicant/ recipient of public assistance, care and services. The recipients of the foster care maintenance payments are the foster children. The Appellant in this case is the provider of services, and any directive to provide a retroactive payment to the former foster parent would only benefit the provider and could not possibly serve the needs of the child for whom the maintenance payments are made. In the situation where the foster child is in the Appellant’s household, it is understood that the foster parent is appearing on behalf of the minor child and that the Appellant is seeking administrative review of the adequacy of the maintenance payments paid on the child’s behalf.
"[T]he Appellant has no standing to appear on behalf of children who are no longer in her household because she is neither an applicant or recipient of services as required by 18 NYCRR 358-3.1.
"It is noted, however, that the Appellant may pursue a judicial redress against the Agency based on any perceived contractual rights.”
Respondent acknowledges that prior to November 1992, fair hearing decisions issued by his designees (which pursuant to subdivision [2] of Social Services Law § 22 are deemed decisions of the Commissioner) were conflicting on the issue of whether a foster parent had standing to seek reimbursement in an administrative proceeding after the subject foster child ceased residing with the parent. Apparently, at a meeting held on November 12, 1992 the Commissioner advised his fair hearing officials that they were to interpret the statute and regulations as denying standing to such applicants. This was done without any amendment of the regulations.
Although an interpretation by an administrative agency is entitled to the greatest weight, a court should only defer to such interpretation if it is not irrational or unreasonable (Matter of Plaza Realty Investors & Queens Blvd. Props. Co. v New York City Conciliation & Appeals Bd., 111 AD2d 395 [2d Dept 1985]).
*910 To determine the rationality of this recent regulatory interpretation, one must examine the nature of foster care payments, which are subject to both Federal and State laws and regulations. Pursuant to 42 USC § 675 (4) (A), "foster care maintenance payments” mean "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child’s personal incidentals, liability insurance with respect to a child, and reasonable travel to the child’s home for visitation.” (See, Foster v Celani, 849 F2d 91 [2d Cir 1988].)
The amounts payable to a foster care parent are determined by DSS regulations, with parents in custody of children who suffer certain conditions entitled to receive higher rates (18 NYCRR 427.6). Although the regulations employ the term "reimbursement” (18 NYCRR 443.3 [v]), there is nothing in the statute or regulations that require a parent to account for foster care monies received. Thus, a parent can spend (or not spend) the monies in such manner as he or she sees fit, and receive "reimbursement” in accordance with the regulations after a period of care.
Respondent does not dispute that a foster parent has standing to challenge a payment while the child is still in residence as theoretically the payment will benefit the child. This, however, is only in theory because, as indicated above, the parent need not account as to what is done with the money.
A parent may incur expenses on credit during the child’s residence which the parent may not have paid prior to the child’s departure. Further, payments by DSS are always made after care is provided. To cut off the simple administrative procedure for reimbursement of monies that may be due and owing for a period when a foster child was in residence based on the fortuitous happening of a child’s departure places a severe burden on persons who are providing an important service to society in caring for a child whose natural parents cannot, for one reason or another, provide a home.
The argument of respondent that standing should only be granted when a child is in residence because only then will the money benefit the child is illusory because the parent is entitled to a specified amount for the period during which care was provided and there is no guarantee that money paid at any time will benefit the child. If the parent can recover the proper amount of reimbursement through a plenary action (with any recovery only obtainable months, if not years, *911 later), it is unreasonable to deny the parent a prompt hearing through administrative proceedings. See Timmy S. v Stumbo (916 F2d 312, 315 [6th Cir 1990]), where it was held that under Federal law, Kentucky’s Human Resources’ "administrative hearing procedures must be made available to foster parents”. The decision in that case was rendered 10 years after the foster care status was terminated.
The irrationality of respondent’s interpretation is further illustrated by the case of Carrero v Bane (NY County, index No. 111608/93), where DSS has taken the position that standing exists if the parent commenced the hearing process while the child was in residence, although the child left the parent’s home prior to the administrative hearing. Why there would be a "benefit” to the child under such circumstances, but not in the case at bar, cannot rationally be explained.
In arguing his position respondent relies on Matter of Peninsula Gen. Nursing Home v Sugarman (44 NY2d 909 [1978], revg 57 AD2d 268, on dissenting opn of Lane, J). There a patient sought Medicaid reimbursement for nursing home expenses after his Medicare benefits were exhausted, but was declared ineligible due to an alleged improper transfer of property shortly prior to applying for benefits. A request for a fair hearing review was withdrawn by the patient’s family after his death. In denying standing to the nursing home to pursue a fair hearing on the claim, Justice Lane wrote (57 AD2d, at 279-281):
"A provider such as the petitioner is entitled to payment only to the extent that it has afforded goods or services to an 'eligible’. If, as in the case at bar, it develops that services have been provided to one deemed ineligible for benefits, a cause of action may be spelled out against the ineligible or even against the governmental agency designated to declare ineligibility. However, vindication of that claim, available as it is in a plenary suit, need not be afforded through the medium of administrative review * * *
"The unilateral private financial interest of the nursing home in recovering expenditures made for services rendered creates a relationship of purchaser and seller. A breach of this relationship would give rise to a plenary suit for breach of contract”.
Although three Judges have recently held this case controlling in situations similar to that at bar (Burges v Sabol, Nassau County, index No. 99956/92, Sept. 27, 1993; Richard *912 son v Bane, Queens County, index No. 3141/91, Sept. 2, 1993; Deem v Bane, Nassau County, index No. 4557/93, Nov. 16, 1993), I find the Medicaid statute and pertinent regulations sufficiently different so as to permit a contrary result when dealing with foster care, where if the parent cannot obtain proper reimbursement administratively, it is unlikely that a remedy will ever be pursued through the expensive route of a plenary contract action. Although a foster care parent may be classified as a provider, and hence in one sense in the same position with respect to a foster child as is a nursing home with respect to its patients, clearly the two cannot be paralleled as the parent cannot reasonably be classified as a "seller of services” as was the nursing home in the Peninsula case (supra).
Moreover, as indicated in Timmy S. v Stumbo (supra), Federal law mandates that a foster parent be given an administrative forum to recover reimbursement authorized by law, with there being no indication that the right to recover past due monies administratively is terminated upon the child leaving the residence. To interpret the law to the contrary and bar the right of a foster parent to an administrative review of a claim for monies owing on the mere happenstance that the child left the parent’s home prior to the time the claim is filed is unreasonable.
Accordingly, the petition is granted to the extent of remanding this matter to respondent for a prompt administrative determination as to petitioner’s right to obtain additional reimbursement due to the conditions asserted by her.